Joy Love Boone MURRAY,
Plaintiff-Appellant,

v.

Carol W. GELDERMAN, Miguel Uria, and Shaun Viguerie, all Individually and d/b/a New Orleans a La Carte, Ltd., and New Orleans a La Carte, Ltd., Defendants-Appellees.

No. 77–2061.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1978.

Thomas S. Keaty, C. Emmett Pugh (on rehearing) New Orleans, La., for plaintiff-appellant.

Michael F. Little, New Orleans, La., for defendants-appellees.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

THORNBERRY, Circuit Judge:

The petition for rehearing is GRANTED, this panel's opinion of November 23, 1977, 5 Cir., 563 F.2d 773, is withdrawn, and the following is substituted in lieu thereof.

Appellant Murray brought this action for copyright infringement pursuant to 28 U.S.C. § 1338 against New Orleans a La Carte, Ltd., and its shareholders. The district court dismissed the complaint for failure to state a cause of action. Rule 12(b) Fed.R.Civ.P. For the reasons stated below, we affirm.

Because the district court considered matters outside the pleadings in ruling on defendants' motion to dismiss, we must treat the motion as one for summary judgment. Rule 12(b), Fed.R.Civ.P.; *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Arrington v.*

*City of Fairfield,* 414 F.2d 687, 692 (5 Cir. 1969).[1] Accordingly, we look at the record in the light most favorable to Murray, the party opposing the motion, and take her allegations as true. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1969); *E. C. Ernst, Inc. v. General Motors Corp.,* 537 F.2d 105, 108 (5 Cir. 1976).

In May 1975, defendant Gelderman approached Murray about the possibility of producing a book containing the menus of famous New Orleans restaurants. The idea originated with Gelderman, who had seen a similar book based on restaurants in Aspen, Colorado. Murray was initially uninterested in the project but later agreed to undertake the creative and editorial work. Murray, Gelderman, and defendants Viguerie and Uria met to discuss forming a corporation to publish the menu book. The articles of incorporation were executed in July 1975, with defendants providing the necessary capital. Although Murray was made an officer and director of the corporation, she declined for financial reasons to invest as a shareholder.

Murray worked on the book by herself for several months, making the necessary contacts and handling various chores relating to publication.[2] The book was published in October 1975, and after publication the copyright was issued in the name of the corporation. Soon thereafter the relationship between the parties began to disintegrate, and this lawsuit followed.

This sequence of events is not critical to the disposition of this case. The crucial question is whether the working relationship between Murray and the defendants was sufficient to bring the "works for hire" doctrine into play. We hold that the doctrine is applicable.

■ The Copyright Act of 1909 [3] provides for statutory copyright protection for an "author," 17 U.S.C. § 4, and defines "author" to include an employer in the case of "works made for hire." 17 U.S.C. § 26. The statute represents a codification of the so-called "works for hire" doctrine recognized by the Supreme Court in *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903).

■ This Court has apparently not been called upon to apply the doctrine,[4] but the general principles in this area are fairly clear. An employer and an employee are not precluded from agreeing that the copyright in a resulting work will vest in the employee, but § 26 creates a rebuttable presumption of copyright in the employer that can be overcome by evidence of a contrary intention of the parties. *Brattleboro Publishing Co. v. Winmill Publishing Corp.,* 369 F.2d 565 (2 Cir. 1966); *Lin-Brook Builders Hardware v. Gertler,* 352 F.2d 298 (9 Cir. 1965); *Picture Music, Inc. v. Bourne,* 457 F.2d 1213 (2 Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972).

■ An employer is entitled to the copyright only when the work was created by the employee within the scope of his

1. The district court granted the motion to dismiss and then held that defendants' alternative motion for summary judgment was moot. However, as we have said before, "the label that a district court puts on its disposition is not binding on a court of appeals." *Tuley v. Heyd,* 482 F.2d 590, 593 (5 Cir. 1973).

2. For example, she selected the restaurants to be featured, secured permission from their proprietors to reproduce their menus, chose an artist to paint a cover picture and supervised his work, dealt with the printer, and engaged in promotional and public relations activities.

3. Act of March 4, 1909, 35 Stat. 1075. After years of effort and frustration, the copyright laws were extensively overhauled in 1976. Pub.L. 94–553, Oct. 19, 1976, 90 Stat. 2541.

The revised statutes are not effective until January 1, 1978, and are thus inapplicable in this case. The new law retains the work for hire doctrine and provides that "the employer . . . is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 90 Stat. 2568 [new 17 U.S.C. § 201(b)].

4. The parties have cited us no Fifth Circuit cases on this point, and our research has revealed none. Not surprisingly, most of the case law has emanated from the Second Circuit.

employment. *Scherr v. Universal Match Corp.,* 417 F.2d 497 (2 Cir. 1969), *cert. denied,* 397 U.S. 936, 90 S.Ct. 945, 25 L.Ed.2d 116 (1970); *Bourne, supra.* The crucial element in this determination appears to be whether the work was created at the employer's insistence and expense, or, in other words, whether the motivating factor in producing the work was the employer who induced its creation. *Siegel v. National Periodical Publications, Inc.,* 508 F.2d 909 (2 Cir. 1974). Another factor is whether the employer had the *right* to direct and supervise the manner in which the work was being performed. *Scherr, supra; Bourne, supra.* Actual exercise of that right is not controlling, and copyright is vested in the employer who has no intention of overseeing the detailed activity of any employee hired for the very purpose of producing the material. *See Yardley v. Houghton Mifflin Co.,* 108 F.2d 28 (2 Cir. 1939), *cert. denied,* 309 U.S. 686, 60 S.Ct. 891, 84 L.Ed. 1029 (1940). In addition, the nature and amount of compensation or the absence of any payment for the work may be considered but are of minor importance. *Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737 (2 Cir. 1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); *Scherr, supra.*

This doctrine is inapplicable in the absence of an employment relationship, and appellant strongly urges that such a relationship does not exist. We disagree, for the facts, viewed in a light most favorable to appellant, indicate otherwise. These determinative facts were placed before the district court by means of the pleadings, affidavits, and depositions. Under these circumstances, summary judgment is appropriate. *See Famous Music v. Bay State Harness Horse Racing & Breeding Ass'n,* 554 F.2d 1213 (1 Cir. 1977).

■ Defendant Gelderman originated the New Orleans menu book project and initially approached Murray about working on it. Murray definitely expected to be compensated for her services in producing the book, though the details of that compensation arrangement are in dispute. The book was published at the insistence of the corporation, which absorbed all costs of publication and reimbursed Murray for out-of-pocket expenses. The corporation also gave her editorial control of the project, without which she would not have taken on the task. It is abundantly clear that Murray was not working for herself, but rather for the corporation.[5] We hold that, on these facts, an employment relationship existed.[6]

■ Murray contends that she alone had control over the contents, format, and production of the menu book, and that the element of employer oversight is missing. Professor Nimmer has labeled this factor as "crucial" in "determining an employment relationship . . . ." *Nimmer on Copyright* § 62.2 (1976). Murray would not take the author's job unless she was given edito-

---

**5.** Murray so much as admitted this in a letter to Gelderman in which she outlined her understanding of the arrangement and stated that she would be entitled to one-third of the profits for her "services rendered to, or on behalf of New Orleans a La Carte, Inc.". Exhibit 1, App. at 68.

**6.** This case is easily distinguishable from cases in which courts have held the evidence failed to establish an employment relationship. For example, in *Epoch Producing Corp. v. Killiam Shows, Inc., supra,* the dispute concerned ownership of the copyright to D. W. Griffith's classic film, "Birth of a Nation." Particularly significant is the fact that the corporations claiming ownership did not come into existence until after the film had been completed. Here, in stark contrast, the very purpose of the corporation was to produce the menu book. In *Epoch,*

as in the instant case, there was no clear-cut employment agreement. There, however, the evidence regarding employment was ambiguous, while here the evidence leads to the inescapable conclusion that there was some sort of employment relationship, though its precise nature is unclear. *Donaldson Pub. Co. v. Bregman, Vocco & Conn, Inc.,* 375 F.2d 639 (2 Cir. 1967), *cert. denied,* 389 U.S. 1036 [88 S.Ct. 768, 19 L.Ed.2d 823] (1968), is similarly distinguishable. There the court was interpreting a written agreement, the language of which indicated that Donaldson was not an employee. Moreover, it is clear that the corporation received only the right to publish Donaldson's songs, not the right to share in the consideration Donaldson received for writing those songs. Moreover, the actions of the parties supported this interpretation of the agreement.

rial freedom, and the defendants "assured [her] that all of the rights of . . . design and creation of the book and its cover would be [hers] alone." Appellant's brief at 2–3. Allowing Murray to offer this "control" agreement—upon which she insisted—to demonstrate that the corporation lacked the requisite supervisory powers over her work would permit an employee to circumvent the works for hire doctrine simply by demanding creative freedom as a condition of employment. We decline Murray's invitation to adopt such a rule, where, as here, an employer has no intention of supervising the work of an employee hired specifically to produce certain material. The corporation, choosing not to exercise its right of supervision, delegated it to Murray in accordance with her demands.

■ Appellant also seems to argue that the existence of disputes surrounding the method of compensation and the precise nature of the relationship between the parties precludes summary judgment. The simple answer to this contention is that neither of these disputed facts has any bearing whatsoever on the pivotal issue of the existence of an employment relationship.[7]

■ Running through appellant's briefs, pleadings, and motions in this case seems to be the thread tying together her theory of this case: that she is entitled to the copyright because she is the book's author. This notion indicates a fundamental misconception of the law in this area. The fact that appellant authored the book in the technical sense is immaterial under the works for hire doctrine, which defines the employer as author for purposes of copyright law. We accept as true Murray's allegations that she wrote the book and performed various cre-

ative, editorial, and promotional tasks. But once we conclude, as we do here, that an employment relationship existed, these facts become irrelevant.

■ No facts alleged by appellant suggest that the parties intended for the copyright to be in the appellant. She has thus failed to overcome the presumption that the mutual intent of the parties is that the title to the copyright shall be in the employer.[8] Accordingly, we affirm the judgment of the district court.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.

---

7. The compensation scheme is clearly collateral. We are not concerned with whether Murray was entitled to a share of the profits or to a precise sum, for neither the form of compensation, nor the amount, is determinative. *See Bourne, supra.* Moreover, the nature of the employment relationship is not dispositive; for example, the works for hire doctrine is applicable when the parties are employer and independent contractor. *Lin-Brook, supra; Brattleboro, supra.*

8. We also note the general rule that the copyright certificate, which in this case was obtained by the corporation, is prima facie evidence of the facts stated therein, including ownership and validity. 17 U.S.C. § 209; *Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 n.1 (2 Cir. 1977); *Nimmer on Copyright* § 141.1 (1976).