793 F.2d 889
 55 USLW 2107, 230 U.S.P.Q. 166, 1986
Copr.L.Dec. P 25,951
 EVANS NEWTON INCORPORATED, a New Jersey corporation,
Plaintiff-Appellee,
v.
CHICAGO SYSTEMS SOFTWARE, and Brian Brazda, an individual,
and James M. Davey, an individual, d/b/a Chicago
Systems Software, Defendants-Appellants.
 Nos. 84-2971, 85-1359.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 6, 1985.
Decided June 19, 1986.
As Amended July 16, 1986.
 
 Charles A. Laff, Laff, Whitesel, Conte & Saret, Chicago, Ill., for defendants-appellants.
 Don C. Stevens, II, Jones, Skelton & Hochuli, Phoenix, Ariz., for plaintiff-appellee.
 Before CUMMINGS, Chief Judge, and WOOD and CUDAHY, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This case involves allegations that the defendants Chicago Systems Software, Brian Brazda, and James Davey engaged in copyright infringement, misappropriation of trade secrets, unfair competition, and breach of contract, based upon the defendants' alleged improper copying of the plaintiff Evans Newton Incorporated's user's manual for the microcomputer program "Project Basic." The plaintiff contracted with the defendants for the defendants to do the computer programming for Project Basic, a program used by educational institutions. The defendants, after finishing work for the plaintiff, attempted to market their own manual and computer program to compete with Project Basic.
 
 
 2
 The plaintiff consequently sued for damages and to enjoin the defendants from marketing the competing program. The defendants counterclaimed that the plaintiff had impermissibly interfered with the defendants' attempts to market their own manual and program. A bench trial before Judge McMillen resulted in a verdict for the plaintiff. Defendants appeal a number of factual findings and conclusions of law. We affirm in part but reverse the district court's award of punitive damages and the plaintiff's attorneys' fees.
 
 I. FACTS
 
 3
 The district court found the following to be the facts of this case. The plaintiff, Evans Newton Incorporated ("ENI"), is a corporation which provides recordkeeping systems to educational institutions throughout the country. During 1978, ENI decided to adapt its educational instruction program to programmable calculators. In cooperation with Victor Business Products, ENI developed calculator-managed and assisted programs for use with the Victor 4900 programmable calculator. ENI's president, Lloyd Ferguson, designed and prepared the programs to perform various functions including storage of information relating to student numbering, student progress, class information and scores. The programs could also produce reports on these topics. ENI incorporated specialized terminology and concepts into the automated recordkeeping system.[1]
 
 
 4
 In May 1979, ENI decided to develop a management program compatible with the new rapid low-cost programmable microcomputers which had become increasingly available to ENI's customers. ENI envisioned that these programs would both facilitate basic accountability of school instructional curriculums and perform various collateral functions such as preparing progress reports, teacher/class reports, student report cards, school and district status reports, and so forth. To bring this vision to life, Ferguson wrote the system bid guidelines with programming specifications. This included flow diagrams and prepared numbering and coding systems. Ferguson also developed sample printouts and reports incorporating all of the concepts developed by ENI for computer-managed instruction.
 
 
 5
 In need of a computer programmer, ENI was referred to defendant Brian Brazda, the president and a partner of defendant Chicago Systems Software ("CSS").[2] James Davey, the other defendant, is vice-president and also a partner of CSS. CSS designs and sells computer software and provides custom programming services for microcomputers. CSS possessed the necessary programming skills to provide ENI the computer coding necessary to run the ENI Computer Managed Instruction Program on a Commodore computer. On June 21, 1979, ENI and CSS agreed that CSS would provide the necessary programming, including complete documentation of how the system operated, for $5,500 (to compensate CSS for an estimated 200 to 300 hours of programming work).
 
 
 6
 CSS and ENI set up a schedule that required CSS to begin working on ENI's program by July 11, 1979. CSS was to demonstrate the final version of the program during an in-service training session in Phoenix in mid-August of 1979. CSS began work on ENI's program in late June or early July of 1979. On August 6, 1979, Brazda received a letter from Ferguson setting out the "terms of this commitment." One such term was that "[t]he ENI Copyright of this program is fully recognized by Chicago Software Systems [sic]." CSS completed the final program by mid-August, and on or about August 14, 1979, Davey and Brazda attended an ENI demonstration in Phoenix, where the new program was introduced to ENI customers. The new program was operational, but ENI's customers requested functional changes and corrections, which Davey and Brazda made. Following the demonstration in Phoenix, Brazda (on behalf of CSS) signed an "ENI Microcomputer Program Copyright Statement" prepared by Ferguson, which implemented Ferguson's letter of August 6.[3] After Brazda signed the statement, ENI paid CSS the first $1,500 of CSS's fee.
 
 
 7
 As soon as the new program became operational in April 1980, ENI began to market its computer-managed instruction program throughout the United States under the trade name "Project Basic." ENI also published a Project Basic user's manual. On June 13, 1980, ENI applied for and received copyright registration for the user's manual. The registration labelled the manual a "work made for hire," but omitted any date of publication. ENI printed a paper copyright notice on its manual.
 
 
 8
 In April 1980, CSS began to market its own program and user's manual entitled "Computerized Classroom Management." The new CSS program competed with the ENI Project Basic program. CSS demonstrated and distributed its program to various potential users and customers. CSS sold two complete copies of its program for $1,200. CSS also sold demonstration disks containing its program to three customers for less than $200.
 
 
 9
 Material portions of the CSS user's manual were substantially similar to ENI's Project Basic user's manual. Furthermore, material portions of CSS's program were similar both in form and function to material portions of ENI's Project Basic program. These similarities violated both the agreement between ENI and CSS and ENI's copyright. On or about June 13, 1980, counsel for ENI sent a letter to CSS maintaining that CSS was "attempting to sell an instructional management program that is basically the same" as the program CSS wrote for ENI. ENI demanded that CSS "immediately desist from any attempts to sell or otherwise make available to third parties any programs or material prepared for ENI or furnished [CSS] by ENI." ENI apparently also sent a copy of this letter to Richard Powers of Commodore Business Machine, a potential customer for CSS.
 
 
 10
 ENI's Project Basic program in its completed form includes both the computer software and the user's manual. The two components have little independent value. In 1980 ENI marketed Project Basic to approximately 300 Commodore computer dealers. Sixty of the Commodore dealers became Project Basic dealers. In return for exclusive Project Basic sales territories, the Commodore dealers paid ENI an amount ranging from $10,000 to $25,000, depending upon the size of the particular dealer's metropolitan area. Although ENI was unsuccessful in obtaining any Project Basic dealers in Georgia, Texas, Illinois, Wisconsin, Minnesota, Ohio, and Oklahoma, this failure was not due to confusion in the marketplace, as CSS also failed to obtain any dealers in those states. Between June of 1980 and June of 1982, no one besides CSS was marketing a program that competed with Project Basic.
 
 
 11
 Following a bench trial, the district court issued a decision on September 11, 1984, which the court subsequently amended on October 29, 1984. The district court found that CSS had infringed upon ENI's valid copyright for the Project Basic manual.[4] Alternatively, the court found that CSS engaged in acts of unfair competition and violated the parties' confidentiality agreement. The court enjoined CSS from further infringement and copying and ordered CSS "to deliver up all infringing articles for destruction." The court dismissed the counterclaims of CSS. The court found ENI's loss of profit damages (or statutory damages) to be $16,000. Because CSS acted knowingly, willfully, and intentionally, the court awarded ENI exemplary damages of $16,000. Finally, the court allowed ENI to recover its costs and attorneys' fees under copyright law. On February 27, 1985, the district court entered a final order awarding ENI $16,000 in attorneys' fees. ENI's bill of costs is evidently still pending and not an issue for this appeal.
 
 II. DISCUSSION
 
 12
 The defendants raise numerous objections to the district court decision. CSS's principal argument is that ENI purposefully jumbled and obfuscated the facts and ENI's various legal theories in order to confuse the trial judge and conceal ENI's true motive for bringing the suit--to eliminate CSS as a competitor. More particularly, CSS alleges that (1) ENI failed to prove copyright infringement, (2) ENI failed to establish a factual or legal basis under contract, trade secret, confidentiality, or unfair competition theory for preventing CSS from marketing its program or manual, (3) ENI failed to demonstrate that it was entitled to injunctive relief, damages, costs, or attorneys' fees, and (4) the district court should not have dismissed CSS's counterclaim. We will address the defendants' four arguments in order.
 
 A. Copyright Infringement
 
 13
 In Selle v. Gibb, 741 F.2d 896 (7th Cir.1984), the court set out the four elements necessary to prove copyright infringement: "(1) ownership of the copyright in the complaining work; (2) originality of the work; (3) copying of the work by the defendant, and (4) a substantial degree of similarity between the two works." Id. at 900. Although Selle involved a musical composition, the four elements apply with equal force to the computer manual at issue here.
 
 
 14
 CSS claims that the plaintiff and defendants were co-authors and co-owners of the copyrighted work, and therefore CSS could not be an infringer. See Richmond v. Weiner, 353 F.2d 41, 46 (9th Cir.1965), cert. denied, 384 U.S. 928, 86 S.Ct. 1447, 16 L.Ed.2d 531 (1966). CSS argues that the district court erred when it determined that the plaintiff's manual was a "work made for hire." Under the Copyright Act of 1976, "copyright ... vests initially in the author or authors of the work." 17 U.S.C. Sec. 201(a) (1985). "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author." Id. Sec. 201(b). To constitute a "work made for hire," the work must be either (1) "prepared by an employee within the scope of his or her employment," or (2) "specially ordered or commissioned." Id. Sec. 101. In order to have a "work made for hire" within the latter category, "the parties [must] expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." Id. Because ENI produced no written instrument, CSS correctly asserts that the computer manual must fall within the "employee" category if it is indeed a "work made for hire."
 
 
 15
 ENI's copyright registration certificate for the manual described the manual as a "work made for hire," as did the district court's finding of fact. The district court also found, however, that CSS was an "independent contractor." CSS argues that if it was an independent contractor the manual cannot fall within the employee category, and thus the manual was not a "work made for hire." Whether CSS was an employee of ENI for purposes of 17 U.S.C. Sec. 101 turns upon whether Congress intended the term employee to encompass only "regular" employees as CSS contends, or whether Congress intended the 1976 Act to retain the somewhat more flexible definition of employee under the 1909 Copyright Act.
 
 
 16
 The Second Circuit faced this same issue recently in Aldon Accessories v. Spiegel, 738 F.2d 548 (2d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984). In Aldon, the court held that statuettes designed by artists and artisans who were not regular employees of the copyright holder could fall within the "work made for hire" doctrine where the contractors operated under the supervision and direction of the copyright holder.[5] Id. at 551-53. The court found that the proper issue was not, as CSS maintains, whether the defendant was an employee or an independent contractor, but rather "[was] the contractor 'independent' or [was] the contractor so controlled and supervised in the creation of the particular work by the employing party that an employer-employee relationship exist[ed]." Id. at 552. In reaching this conclusion, the Aldon court carefully considered the legislative history of 17 U.S.C. Sec. 101 and determined that Congress did not intend to significantly narrow the definition of "employee" as CSS here contends. The court concluded that nothing in the 1976 Copyright Act or its legislative history indicated "that Congress intended to dispense with ... prior law [the 1909 Copyright Act and cases construing it]" which held that "if an employer supervised and directed the work, an employer-employee relationship could be found even though the employee was not a regular or formal employee." Id. We find the Second Circuit's analysis and conclusion compelling.
 
 
 17
 Having properly framed the issue, it is clear that the district court's finding that the manual was a "work made for hire" is not clearly erroneous. The evidence at trial essentially came down to a credibility contest. The judge believed ENI's testimony that Ferguson supervised and directed the work, and that CSS merely used their programming skills to produce the work according to ENI's specifications. ENI therefore established the first element of its copyright claim--that ENI owned the sole copyright in the disputed work. Selle, 741 F.2d at 900.
 
 
 18
 CSS also alleges that ENI failed to prove the second and third elements of copyright infringement, i.e., the originality of the Project Basic manual and the copying of the manual by CSS. CSS does not clearly develop these arguments, but both appear predicated upon CSS's mistaken claim that it was a coauthor of all the work it did for ENI. These claims are without merit. ENI produced enough evidence on each element to support the district court's decision.
 
 
 19
 CSS argues that ENI's copyright infringement claim must ultimately fail because "there is no similarity between plaintiff's manual and defendants' program or manual." To determine substantial similarity, we look at (1) whether the defendant copied from the plaintiff's work and (2) whether the copying went so far as to constitute an improper appropriation. Scott v. WKJG, 376 F.2d 467, 469 (7th Cir.), cert. denied, 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1967). The test for substantial similarity is "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Atari, Inc. v. North American, 672 F.2d 607, 614 (7th Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). See also Ideal Toy Corporation v. Fab-Lu Ltd., 360 F.2d 1021, 1022 (2d Cir.1966).
 
 
 20
 In this case, the district court found that ENI's Project Basic program included both the computer software and the user's manual, and the two components had no significant value independent of one another. The manual is, in essence, an explanation of the program and a description of what the user will see on the screen while operating the program. Brazda, one of the defendants, acknowledged that CSS contracted to provide ENI with a manual for use with Project Basic. The manual was largely useless apart from the program.
 
 
 21
 The testimony of ENI's president Ferguson established the similarities of expression between the two manuals, and this testimony is sufficient to support the district court's finding. Moreover, ENI buttressed Ferguson's testimony with substantial evidence about the similarities between the two underlying programs upon which the manuals were based.[6] This factual dispute turned upon the district judge's in-court evaluation of the manuals, the credibility of the witnesses, and expert testimony, and we do not find that his decision was clearly erroneous. Therefore, we affirm the district court's finding that CSS infringed ENI's copyright in the Project Basic manual.
 
 
 22
 B. Contract, Trade Secret, Confidentiality, and Unfair Competition.
 
 
 23
 The district court also found that CSS was liable to ENI under several alternate theories. The court held CSS had engaged in acts of unfair competition and violated the confidentiality agreement between the parties. Because these alternate theories are merely additional grounds to support the court's decision, in view of our holding that CSS infringed ENI's valid copyright in the Project Basic manual, it is unnecessary for us to review the district court's resolution of the alternate theories.
 
 C. Relief
 
 24
 The district court granted an injunction against further infringement and copying, and required CSS to deliver up all infringing articles for destruction. The court awarded ENI damages of $16,000, apparently either measured by ENI's loss of profits, 12 U.S.C. Sec. 504(b) (actual damages), or as statutory damages pursuant to 17 U.S.C. Sec. 504(c). Because CSS's actions were "knowing, willful, and intentional," the court awarded ENI $16,000 in punitive damages. Finally, the court allowed ENI to recover its attorneys' fees and costs under copyright law. The court later set the amount of attorneys' fees at $16,000. CSS challenges each component of the district court's relief order. To the extent that CSS bases its challenges upon its argument that it did not infringe ENI's copyright (e.g., CSS's claim that ENI did not establish a basis for injunctive relief), we need not consider the challenges. CSS raises an additional argument that even if some basis of liability was proven, ENI did not prove actual damages of $16,000. Our analysis of this issue is complicated by the fact that the district court did not make it clear whether the damages were actual or statutory, or what the basis for the $16,000 amount was. Nevertheless, we find sufficient evidence in the record to hold that the district court did not err in awarding $16,000 to ENI.
 
 
 25
 CSS contends that its total sales of the infringing program were only $1,400, and that ENI failed to show that CSS sold its manual or program to anyone that ENI would have sold to, or that CSS's sales efforts caused any confusion, or that CSS caused ENI to lose any sales. ENI counters that it presented sufficient evidence of market penetration, dollar volume, and franchise and dealer fees which indicated that the $16,000 award was justified, if not overly conservative. ENI points out that the mere fact that CSS was not able to capitalize as it had hoped on its infringement does not prevent the district court from compensating ENI for losses sustained in excess of CSS's profit.[7]
 
 
 26
 ENI presented sufficient evidence to support the district court's award of $16,000. Commodore dealers paid ENI between $10,000 and $25,000 for exclusive sales territories in which to market Project Basic. Ferguson testified that ENI had an overall market penetration of approximately 20% but was unable to make a single sale within the midwest region in which CSS was operating. Ferguson further testified that in his opinion ENI's sales of Project Basic, although they increased substantially each year, would have grown even more rapidly but for CSS's infringement.[8] The district court evidently gave some weight to Ferguson's testimony, although the court clearly did not grant ENI the substantial damages suggested by Ferguson. Rather the district court chose a more modest estimate, perhaps based upon what ENI would have profited had one Commodore dealer in the midwest purchased an exclusive sales territory ($10,000 to $25,000 depending upon the size of the metropolitan area). The record contains sufficient support for us to find that the district court did not err in awarding $16,000 was not clearly erroneous.
 
 
 27
 The district court also assessed $16,000 in punitive damages against CSS and $16,000 to reimburse ENI's attorneys' fees. CSS argues the district court erred in basing these two decisions upon copyright law because 17 U.S.C. Sec. 412 prohibits the award of statutory damages (which would include punitive damages) or attorneys' fees unless the plaintiff registers its copyright prior to the infringement.[9] See Deltak, Inc. v. Advanced Systems, 767 F.2d 357, 359 (7th Cir.1985). The district court found that CSS began its infringement in April 1980, and ENI applied for and received its copyright registration in June 1980. ENI failed to offer any argument, in either its brief or at oral argument, why section 412 should not apply. Therefore, ENI is limited to recovering its actual damages for CSS's infringement pursuant to 17 U.S.C. Sec. 504(b).
 
 
 28
 In awarding ENI $16,000 in attorneys' fees and an as yet undetermined amount for costs, the district court specifically linked the award to copyright law. The district judge said that under Illinois law, which governed ENI's breach of contract theory, a plaintiff cannot receive attorneys' fees for breach of contract. Because the district court erred in awarding fees based upon copyright law in violation of 17 U.S.C. Sec. 412, we must reverse the court's award of fees.
 
 
 29
 The district court's award of $16,000 in punitive damages is more troublesome because the court failed to specify which ENI theory or theories supported punitive damages. The court merely based the punitive damages on CSS's "knowing, willful and intentional" actions. Under copyright law, punitive damages could come from an award of statutory damages for willful infringement. 17 U.S.C. Sec. 504(c)(2). Statutory damages are subject to the same 17 U.S.C. Sec. 412 limitation as attorneys' fees, however--the plaintiff must register the copyright prior to the infringement. As we pointed out above, the district court found that ENI did not register its copyright prior to CSS's infringement. Therefore, ENI cannot justify punitive damages under copyright law. Because ENI fails to articulate any alternative ground to uphold the district court's decision, we must reverse the court's award of punitive damages.
 
 D. CSS's Counterclaims
 
 30
 CSS's final argument is that the district court violated Fed.R.Civ.P. 52 by dismissing CSS's counterclaims with prejudice after the trial without any findings of fact or conclusions of law. CSS had counterclaimed for inducement to breach contract, unfair competition, and trade libel. The counterclaims arose from ENI's attempts to protect itself against CSS's infringement of ENI's copyright. Inasmuch as the counterclaims were based upon CSS's theory of the case (i.e., that neither CSS's manual nor program infringed ENI's copyright), a theory which we decline to embrace, the district court did not err in dismissing CSS's counterclaims. The findings of fact and conclusions of law concerning ENI's claims, which were set out in the district court's memorandum, clearly support the dismissal of CSS's counterclaims.
 
 III. CONCLUSION
 
 31
 The district court found that CSS infringed upon ENI's copyright in the user's manual for Project Basic, an ENI educational-recordkeeping computer program for which CSS did the programming. We affirm the district court's grant of an injunction and $16,000 in actual damages to ENI. We reverse the court's award of attorneys' fees and punitive damages because both are barred by 17 U.S.C. Sec. 412. The district court's judgment is therefore
 
 
 32
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 [1]
 A number of these specialized terms and concepts were incorporated by ENI into Project Basic, and then appeared in the defendants' program and manual
 
 
 [2]
 For convenience sake, we will refer to the defendants Brazda, Davey, and CSS corporately as "CSS" unless the context requires greater specificity
 
 
 [3]
 The statement which Brazda signed provided:
 ENI MICROCOMPUTER PROGRAM COPYRIGHT STATEMENT
 I the undersigned agree that all Microcomputer Programming done by Chicago Systems Software, 2200 W. Lawrence Avenue, Chicago, Illinois 60625 for Evans Newton Incorporated, hereinafter referred to as ENI, is the exclusive property of ENI. I agree not to sell, trade, give, or intentionally make available programs written for ENI to any private or public individual or corporation. I agree also that my employees should be informed of the above restriction and will take all reasonable precautions to prevent the illegal use of programs written for ENI.
 
 
 [4]
 The district court based this finding primarily upon viewing portions of the two software programs and hearing expert testimony on the issue of similarity
 
 
 [5]
 At issue in Aldon was the following instruction, which the court held to be an accurate expression of the law:
 A work for hire is a work prepared by what the law calls an employee working within the scope of his employment. What that means is, a person acting under the direction and supervision of the hiring author, at the hiring author's instance and expense. It does not matter whether the for-hire creator is an employee in the sense of having a regular job with the hiring author. What matters is whether the hiring author caused the work to be made and exercised the right to direct and supervise the creation.
 738 F.2d at 551.
 
 
 [6]
 We do not express any opinion as to whether the substantial evidence of the similarity of the underlying programs would be sufficient by itself. This evidence is clearly probative, however, because the program is the basis for the manual, and the program and the manual are intertwined as the final product
 This case is unusual because ENI's evidence of substantial similarity focused primarily on the computer programs and not the manuals. ENI brought infringement claims on both the program and the manual, but at trial ENI did not have the proper documents to prove it had registered its copyright for the program, so the district court was forced to dismiss the program claim. This left ENI with only its claim that CSS infringed the copyright on the Project Basic manual.
 
 
 [7]
 In Finding of Fact # 22, the district court found that "ENI suffered damages for the actual dealer sales or licenses made by CSS," an amount which the court recognized the parties had stipulated to being approximately $1,400. The court went on to find that "the total amount of plaintiff's loss attributable to defendants' wrongful acts is not more than $16,000.00." The defendants claim that the court contradicted itself, but we believe it more likely that the court intended "the total amount of plaintiff's loss" to include more than just the damages for CSS's sales. In Finding of Fact # 22, the court referenced back to both Finding of Fact # 15 (the parties' stipulation to approximately $1,400) and Finding of Fact # 19, which discussed Project Basic's market penetration and the licensing of Commodore dealers
 
 
 [8]
 The defendants claim that the district court excluded all the evidence plaintiff relies upon to support damages in excess of $1,400. Although the transcript is far from clear, we read it as indicating that what the district court disallowed was the plaintiff's attorney's attempt to solicit from Ferguson an estimate of how many Commodore dealers ENI would have licensed but for CSS's infringement. The court did not exclude ENI's evidence (most of which was merely a repeat of previously introduced testimony), but rather ruled that the evidence was an insufficient foundation for the ultimate question to Ferguson. The confusion in the record apparently stems from the court's use of "offer of proof" to describe ENI's summary and repeat of evidence already in the record, evidence which ENI claimed laid the necessary foundation to allow it to ask Ferguson the ultimate question
 
 
 [9]
 17 U.S.C. Sec. 412 provides:
 In any action under this title, other than an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--
 (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
 (2) any infringement of copyright commenced after first publication of work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.