**SANDWICHES, INC., d/b/a Suburpia Submarine Sandwich Shoppes, Plaintiff,**

v.

**WENDY'S INTERNATIONAL, INC., Defendant.**

**WENDY'S INTERNATIONAL, INC., Plaintiff,**

v.

**SUBURPIA SUBMARINE SANDWICH SHOPPES OF MILWAUKEE, INC., and William Drilias, Defendants.**

Nos. 85–C–1488, 18–C–1481.

United States District Court, E.D. Wisconsin.

Feb. 20, 1987.

Michael Jassek, Milwaukee, Wis., for Sandwiches, Inc.

Richard Florsheim, Milwaukee, Wis., for Wendy's Intern. Inc.

James L. Adashek, Milwaukee, Wis., for Suburpia Submarine Sandwich Shoppes.

Allan Strauss, Milwaukee, Wis., for Drilias.

## DECISION AND ORDER

CURRAN, District Judge.

## I. BACKGROUND AND PROCEDURE

### A. Civil Action No. 85–C–1481

The above-captioned litigation commenced on June 25, 1984, when Wendy's International, Inc. filed suit against Suburpia Submarine Sandwich Shoppes of Milwaukee, Inc. and William Drilias in the United States District Court for the Southern District of Ohio. In its complaint Wendy's alleges that it created two original thirty-second television commercials for which it holds the copyrights. Wendy's claims that Suburpia and Drilias disseminated the false accusation that Wendy's had stolen a commercial belonging to them (the "Sub Commercial").[1] Consequently, Wendy's seeks compensatory and punitive damages and a judgment declaring that: (1) Suburpia has forfeited any copyright interest in the Sub Commercial; (2) Suburpia's claim of copyright for the Sub Commercial in its purported application for copyright registration is invalid; and (3) the Wendy's commercials do not violate any statutory or common-law right which Suburpia may have in the Sub Commercial. This case is predicated on diversity jurisdiction in that Wendy's is incorporated in Ohio with its principal place of business in Dublin, Ohio and Suburpia is incorporated in Wisconsin with its principal place of business in Milwaukee, Wisconsin. Drilias is a citizen of Wisconsin. *See* 28 U.S.C. § 1332(a). In an Opinion and Order of April 3, 1985, the Ohio court transferred venue to the Eastern District of Wisconsin where this case is now pending as Civil Action No. 85–C–1481. *See* 28 U.S.C. § 1404(a).

### B. Civil Action No. 85–C–1488

After the first lawsuit had been transferred to this court, Sandwiches, Inc., d/b/a Suburpia Submarine Sandwich Shoppes, commenced a lawsuit against Wendy's for copyright infringement of a television commercial Suburpia calls the "Cheeseburga" commercial. Suburpia claims that it had registered a copyright on that commercial pursuant to the federal copyright statutes. *See* 17 U.S.C. §§ 101–810. Therefore, this court has subject matter jurisdiction over this action under 28 U.S.C. § 1338. This copyright has now been purportedly assigned to the plaintiff Sandwiches. On January 31, 1985, Suburpia was ordered into liquidation proceedings under Chapter 7 of the United States Bankruptcy Code by the United States Bankruptcy Court for the Eastern District of Wisconsin. Pursuant to the court-approved sale of Suburpia's business and related assets, the trustee for Suburpia transferred and assigned to Sandwiches all right, title and interest in and to the copyright secured on "Cheeseburga." This assignment expressly includes an assignment of all causes of action which have accrued in favor of Suburpia for infringement of the copyright on "Cheeseburga." This assignment was duly recorded with the Register of Copyrights on October 4, 1985. Sandwiches claims that in late 1983 and early 1984, Wendy's infringed on this copyright by producing two commercials termed "Fluffy Bun I" and "Fluffy Bun II" which it distributed, displayed and attempted to copyright. Sandwiches claims

---

1. This commercial, as produced for Suburpia, is also referred to as the "Cheeseburga" or "Clown" Commercial. Allegedly similar commercials produced for Wendy's are referred to as the "Fluffy Bun I" and "Fluffy Bun II" commercials.

that its actual damages due to this infringement are in excess of forty-eight million dollars. In addition to these damages, Sandwiches seeks an accounting and costs.

On motion of Sandwiches, its own case and Wendy's case were consolidated on April 7, 1986. Near the end of the period scheduled for the discovery of fact witnesses, Wendy's filed a motion for summary judgment which is now fully briefed and ready for decision.

## II. FACTS

The record reveals that in the early 1970's, Suburpia's then-owner, William Foley, asked James R. Weller, a Milwaukee advertising executive, to do commercial work for Suburpia. *See* Affidavit of James R. Weller at ¶ 3. Eventually, Weller proceeded to create and produce a series of radio commercials for Suburpia. *See Id.* Weller claims he received very little compensation for this work. *See Id.*

Weller left Milwaukee in 1974, but in 1978, when he was a vice president of a New York advertising agency, Foley again asked him to create a Suburpia commercial, this time for television. Weller recalls that:

> I reminded Mr. Foley that I had received very little compensation for my prior work for Suburpia, but stated that, because we were friends, I would agree to create a television commercial for Suburpia's use provided that I, not Suburpia, would retain all rights, including any copyright, to this commercial after its production. I wanted those rights because I knew that commercials could generate licensing revenues for the owners of such rights and I knew that other artists who had created advertisements and retained the rights were sometimes able to earn income by licensing those rights to others.

*Id.* at ¶ 4.

Weller alleges that he and Foley then entered into an oral contract whereby Weller would work on a new Suburpia television commercial which Suburpia would be allowed to broadcast. In return, Weller was to retain all rights to the commercial. Weller asserts that he and Foley did not sign any agreement that this commercial would be a "work made for hire." *Id.* at ¶ 5.

What Suburpia calls the "Cheeseburga" commercial and Wendy's now calls the "Clown" commercial was created, filmed and televised in 1979. *See Id.* at ¶ 6. Several other persons, including Josef Sedelmaier, a Chicago film producer, collaborated in making the changes on Weller's original script. Sedelmaier also directed, produced, and filmed the commercial. *See Id.* Weller maintains that: "Mr. Sedelmaier and I created the 'Clown' commercial without any creative input, direction or control from Suburpia." *Id.* at ¶ 7. Weller's account of the production of the "Cheeseburga/Clown" commercial is corroborated by Sedelmaier. *See* Affidavit of J. Josef Sedelmaier at ¶¶ 5 & 6.

In late 1983 and early 1984, Wendy's and the advertising firm of Dancer, Fitzgerald, Sample, Inc. prepared a series of proposed television commercials. The advertising strategy was "designed to communicate that Wendy's Single hamburger had more beef than McDonald's Big Mac or Burger King's Whopper." *See* Affidavit of Robert Lawrence Reed at ¶ 2. Sedelmaier was commissioned to produce the commercials which are termed the "Fluffy Bun I" and "Fluffy Bun II" commercials. On March 19, 1984, after production was completed, Wendy's applied for registration of its copyright in these commercials. *Id.* at ¶ 3; [Sandwiches'] *Complaint* at ¶ 21. Suburpia did not apply for copyright registration of the "Cheeseburga/Clown" commercial until April 16, 1984. *See* Affidavit of Robert E. Shumaker at Exhibit 1, p. 7.

Meanwhile, in August of 1982, Foley, who had filed a personal bankruptcy action, sold his Suburpia stock to Festivals, Inc. which was principally owned and managed by defendant William Drilias and his brother Thomas. A written Stock Purchase Agreement was executed by all the parties with respect to this stock transfer. *See* Affidavit of William J. Drilias at Exhibit A.

Section 2.11 of this Agreement provides that:

Shareholders shall convey, transfer, assign and quit claim to Buyer all of Shareholders' right, title and interest, if any, in the name "Suburpia," "Suburpia Submarine Sandwiches," "Suburpia Submarine Sandwich Shoppes of Milwaukee," and any combination and/or abbreviation of said trade names and in any and all promotional materials promoting the name and business of said Corporation, and Shareholders hereby disclaim any right, title and interest in said trade names. Likewise Shareholders shall convey, transfer, assign and quit claim to Buyer all of Shareholders' right, title and interest, if any, in any trademark and/or copyright of designs or materials bearing any of the aforementioned trade names, and Shareholders hereby disclaim any right, title and interest in said trademarks or copyrights.

Affidavit of William J. Drilias at Exhibit A, § 2.11. In addition, the Agreement states that all items of real and personal property owned by Suburpia were to be transferred to Festivals, Inc. *See Id.* at § 2.08. A further provision of the Agreement requires that Suburpia make full disclosure of any and all other agreements, commitments, contracts or leases to which Suburpia was a party at the time of the sale. *See Id.* at § 2.17. The list provided pursuant to this clause does not contain any mention of the "Cheeseburga/Clown" commercial. *See* Affidavit of Thomas Drilias at Exhibit B. William Drilias claims that prior to the stock transfer he was aware of Suburpia's television and radio commercials and "was under the impression that full and complete title to said promotional materials was to be transferred to Festivals, Inc." Affidavit of William J. Drilias at ¶ 4. He also says that at no time did Weller come forward to claim that he was the owner of the commercial. *Id.* at ¶ 9. Thomas Drilias states that he too was aware of the commercials in question. *See* Affidavit of Thomas Drilias at ¶ 4. He says that Foley told him that Festivals had

acquired the commercial in the stock purchase, *Id.* at ¶ 7, and that:

At no time during the negotiations prior to the stock transfer or the actual closing of the stock sale was any mention made by William J. Foley or anyone else on his behalf of a pre-existing agreement with James Weller regarding the ownership of the "Cheeseburga" commercial.

*Id.* at ¶ 6. David A. McGuire, an attorney who represented William and Thomas Drilias and Festivals, Inc., confirms that Weller never made any claim of ownership of the "Cheeseburga" commercial to him when he contacted Weller in connection with investigation and research he was doing into his clients' rights to the "Cheeseburga/Clown" commercial. *See* Affidavit of David A. McGuire at ¶¶ 4–10.

On January 31, 1985, Suburpia was ordered into liquidation proceedings and on June 19, 1985, the bankruptcy trustee transferred and assigned to Sandwiches all business and related assets of Suburpia.

Given these facts and pursuant to Federal Rule of Civil Procedure 56, Wendy's International, Inc. has moved the court:

1. For summary judgment in Case No. 85–C–1488, dismissing the action on the grounds that there is no material issue as to any material fact and that the defendant Wendy's is entitled to judgment as a matter of law; and

2. For partial summary judgment in Case No. 85–C–1481, in favor of plaintiff Wendy's declaring that Wendy's commercials entitled "Fluffy Bun I" and "Fluffy Bun II" (also known as "Whopping Big Burger") do not infringe any copyright now owned, or ever owned, by Sandwiches, Inc.; Suburpia Submarine Sandwich Shoppes of Milwaukee, Inc.; or William Drilias.

Motion for Summary Judgment and Notice of Motion at 2. In support of this motion Wendy's has submitted the affidavits of James R. Weller, executive vice president of an advertising agency; J. Josef Sedelmaier, president of Sedelmaier Film Productions, Inc.; and Robert Lawrence Reed, executive vice president of DFS–Dorland

Worldwide, Inc., an advertising agency. In response, Sandwiches, Suburpia, and Drilias have submitted the affidavits of Joseph Pecor, who was marketing director of Festivals, Inc.; David A. McGuire, an attorney associated with the Chicago law firm of Stone, McGuire & Benjamin; William J. Drilias, manager of Festival Events, Inc.; and Thomas Drilias, executive vice president of Festival Events, Inc.

## III. STANDARDS FOR SUMMARY JUDGMENT

The United States Supreme Court recently set forth the following principles to be applied in ruling on a motion for summary judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there by no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted). *See also Celotex Corporation v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490 (7th Cir.1986).

The Court went on to say that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 106 S.Ct. at 2511. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. The substantive evidentiary standard of proof that would apply at a trial on the merits applies on a motion for summary judgment. *Id.* at 2512. The party having the burden of proof at trial must show that a reasonable jury could proceed to find a verdict in its favor beyond a reasonable doubt, or by clear and convincing evidence, or by a preponderance of the evidence—whichever burden applies to the case. Faced with this evidence, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented." *Id.*

The Court cautioned that it is not authorizing a trial on affidavits. *Id.* at 1213. The jury, not the judge, must still make credibility determinations, weigh evidence, and draw legitimate inferences from the facts. Moreover, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in its favor. *Id.*

In *Anderson v. Liberty Lobby,* a libel action, the court emphasized that, even where intent or motive is at issue, the nonmovant cannot rest on the pleadings, but must present affirmative evidence, even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. *Id.* at 2514.

## IV. DISCUSSION AND DECISION

In the cases at bar the substantive law which will identify which facts are material is found in the federal copyright statutes. *See* 17 U.S.C. §§ 101–810. The 1909 Copyright Act embodying these statutes was extensively revised in 1976. *See* Pub.L. No. 94–553, 90 Stat. 2541 (codified at 17 U.S.C. §§ 101–810 (1976)). The relevant provisions of the 1976 Act went into effect on January 1, 1978. *See* Pub.L. No. 94–553, § 102, 90 Stat. 2598 (codified at 17 U.S.C. note preceding § 101 (1976)); *see also id.* § 101, 90 Stat. 2572 (codified at 17 U.S.C. § 301 (1976)). Thus, because the acts relevant to the claims in these cases occurred in 1979, the 1976 Act applies in this case. *See Real Estate Data, Inc. v. Sidwell Company,* 809 F.2d 366, 370–372 (7th Cir.1987).

Based on provisions of the 1976 Act, Wendy's advances two arguments in moving for a judgment dismissing Sandwiches' action and declaring that Wendy's commercials do not infringe any copyright owned by Suburpia or Sandwiches.

> First, the undisputed facts establish that neither Suburpia nor Sandwiches ever owned a copyright in the "Clown" commercial that Sandwiches now claims Wendy's infringed.

> Second, the undisputed facts show that even if the Wendy's commercials had been virtually identical to the "Clown" commercial (which they were not), Wendy's could not be guilty of copyright infringement because the Wendy's commercials were produced by a co-author of the "Clown" commercial, who had, as a matter of law, a right to produce such derivative works and to give Wendy's permission to use them.

Wendy's International, Inc.'s Brief in Support of Motion for Summary Judgment at 2.

 To establish a federal claim of copyright infringement, a plaintiff must prove its ownership of a valid copyright and copying, or infringement, of the copyrighted work by the defendant. *See San- ford v. CBS, Inc.,* 594 F.Supp. 711, 713 (N.D.Ill.1984). As a threshold showing, Sandwiches has submitted its Certificate of Copyright Registration in the "Cheeseburga/Clown" commercial. *See* Affidavit of Thomas Drilias at Exhibit C. Although such a certificate provides prima facie evidence of the ownership and validity of the copyright, *see* 17 U.S.C. 410(c), the presumption of ownership and validity to which it gives rise can be rebutted. *See Seiler v. Lucas Film Ltd.,* 797 F.2d 1504, 1510 (9th Cir.1986), *modified,* 808 F.2d 1316 (1987). Wendy's says that the certificate should be accorded less weight when the copyright office has not examined the issue in question. *See Past Pluto Productions Corporation v. Dana,* 627 F.Supp. 1435, 1440 & n. 5 (S.D.N.Y.1986), *citing with approval, Knickerbocker Toy Company v. Winterbrook Corporation,* 554 F.Supp. 1309 (D.N.H.1982).

 Neither party claims that Suburpia's copyright registration certificate is dispositive of the main issue in this case which is whether Suburpia's assignee Sandwiches owns the copyright to the "Cheesburga/Clown" commercial. Wendy's point out that, generally, the ownership of a copyright in a work vests initially in the author or authors of the work. *See*

17 U.S.C. § 201(a).[2] The only exception is in the case of a "work made for hire," where the employer is considered the author. *See* 17 U.S.C. § 201(b).[3] Wendy's maintains that Weller and Sedelmaier were the sole authors of the "Cheeseburga/Clown" commercial, so Suburpia could have become the owner of the copyright only if the prerequisites of the "works made for hire" doctrine have been met. *See* Affidavit of James R. Weller at ¶ 6; Affidavit of J. Josef Sedelmaier at ¶ 5.

Section 101 of Title 17 of the United States Code defines a "work for hire" as:

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

17 U.S.C. § 101.

Although the commercial appears to fall into the "audiovisual work" category of the definition of "commissioned work" in part (2) of section 101, the undisputed facts show that there was no written agreement between Suburpia (or Foley) and Weller. Therefore, the "work for hire" doctrine applies only if Weller was an employee of Suburpia when he created the commercial.

Wendy's argues that neither Weller nor Sedelmaier were "employees" of Suburpia because Suburpia exercised no supervision, direction or control over their creative effort. The nonmovants' in turn, argue that it is the *right* to control which determines whether a work is done for hire, not the actual exercise of control. They acknowledge that Suburpia, in the person of Foley, exercised no control over the development and production of the "Cheeseburga/Clown" commercial, but they point out that Foley was the one who importuned Weller to make the commercial, and that he could have exercised ultimate control.

Sandwiches cites *Murray v. Gelderman,* 566 F.2d 1307 (5th Cir.1978) in support of its proposition that it is the employer's right to control which is dispositive of whether a work is made for hire by an employee or independent contractor. However, *Murray* was decided under provisions of the 1909 Copyright Act. There was a major revision to the definition of "work made for hire" by an independent contractor under the 1976 Act, which applies in this case. *See* H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 121, *reprinted in* [1976] U.S.Code Cong. & Admin.News 5659, 5737. Another district court has explained that:

Most court decisions interpreting the work-made-for-hire doctrine under the

**2.** 17 U.S.C. § 201(a) provides:

**Initial Ownership.**—Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work.

**3.** 17 U.S.C. § 201(b) provides:

**Works Made for Hire.**—In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

1909 Act viewed an independent contractor in the same light as an employee. Thus, in the absence of an expressed intention to the contrary, copyright ownership was presumed to vest in the employer. *May v. Morganelli-Heumann & Assoc.*, 618 F.2d 1363, 1368–1369 (C.A. 9th Cir.1980); *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565, 568 (C.A. 2nd Cir.1966); 1 M. Nimmer, Nimmer on Copyright § 5.03[B][2][c] at 5–21 (1981) and cases cited therein.

The definitional section of the 1976 Copyright Act does not adopt this judicially created presumption but, instead, limits works made for hire by independent contractors to prescribed categories and only to those situations where the parties expressly agree in a signed written instrument that the work shall be considered a work made for hire. *May v. Morganelli-Heumann & Assoc.*, supra, at 1368 n. 4 (dicta); *Meltzer v. Zoller*, 520 F.Supp. 847, 854–855 (U.S.D.C.N.J. 1981); *Mister B. Textiles, Inc. v. Woodcrest Fabrics, Inc.*, 523 F.Supp. 21, Copyright L.Rep. (CCH) ¶ 25–213 (U.S.D.C.S. D.N.Y.1981); 1 M. Nimmer, Nimmer on Copyright § 5.03[B][2][a] at 5–18 to 5–19 (1981).

*Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Company*, 542 F.Supp. 252, 257 (D.Neb.1982).

The 1976 Act does not define the term "employee," but the Seventh Circuit has adopted a broad definition of the term as it is used in the copyright statutes. The court has stated that:

A work for hire is a work prepared by what the law calls an employee working within the scope of his employment. What that means is, a person acting under the direction and supervision of the hiring author, at the hiring author's instance and expense. It does not matter whether the for-hire creator is an employee in the senses of having a regular job with the hiring author. What matters is whether the hiring author caused the work to be made and exercised the right to direct and supervise the creation.

*Evans Newton, Inc. v. Chicago Systems Software*, 793 F.2d 889, 884 n. 5, (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 434, 93 L.Ed.2d 383 (1986), quoting *Aldon Accessories v. Spiegel*, 738 F.2d 548 (2d Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984). *See also Baltimore Orioles v. Major League Baseball Players Association*, 805 F.2d 663, 669–70 (7th Cir. 1986).

The undisputed facts show that Foley, acting for Suburpia, hired Weller to develop a television commercial. *See* Affidavit of James Weller at ¶ 4; Transcript of Deposition of William J. Foley at 31–54. The evidence also shows that, in creating this commercial, Weller never acted under the direction and supervision of Foley. *See* Affidavit of James Weller at ¶ 7; Transcript of Deposition of William J. Foley at 54–70. Weller was acting at Foley's initial instance and Foley did pay the production cost of the commercial. *See* Deposition of William J. Foley at 42–53. However, Weller himself was not paid a fee for his creative services. Foley testifies that Weller asked for "the creative rights to the thing" in lieu of payment. *See* Transcript of Deposition of William J. Foley at 44. Under the *Aldon Accessories* test, adopted by the Seventh Circuit, the crucial question is "whether the hiring author caused the work to be made and exercised the right to direct and supervise the creation." *Evans Newton, Inc.*, 793 F.2d at 884 n. 5. And although it could be said that Foley caused the commercial to be made, these undisputed facts, including Foley's own testimony, show that he never *exercised* the right to direct and supervise the creation. He was never "calling the shots" as Weller was creating the commercial. *Joseph J. Legat Architects v. United States*, 625 F.Supp. 293, 296–99 & n. 7 (N.D.Ill.1985). Therefore, Weller was not an employee for purposes of the "works made for hire" doctrine and the "Cheeseburga/Clown" commercial was not a "work made for hire." Consequently, as a matter of law, the copyright does not vest in Suburpia or its assignee Sandwiches.

## ORDER

Accordingly, the court ORDERS that Wendy's International, Inc.'s Motion for Summary Judgment (filed December 31, 1986) IS GRANTED, as follows:

1. Summary judgment is granted on all claims asserted by Sandwiches, Inc., d/b/a Suburpia Submarine Sandwich Shoppes, in Civil Action No. 85–C–1488.

2. Partial summary judgment in Civil Action No. 85–C–1481 is granted in favor of Wendy's International, Inc. The court declares that neither Suburpia nor Sandwiches, Inc. has a copyright interest in the "Cheeseburga/Clown/Sub" commercial.

IT IS FURTHER ORDERED that Civil Action No. 85–C–1488 IS DISMISSED with prejudice.

IT IS FURTHER ORDERED that the parties must comply with the court's June 24, 1986, scheduling Order, as amended by its January 6, 1987, Order. As these orders provide, no stays of discovery will be approved during the pendency of motions or for any other reason.