Craig **ELBE**, Plaintiff,

v.

Bryan **ADKINS**, et al., Defendants.

No. 1–90–280.

United States District Court,
S.D. Ohio, W.D.

Oct. 30, 1991.

Charles H. Brown, III, Dinsmore & Shohl, Cincinnati, OH, for plaintiff.

Dennis Arwood Liggett, Blue Ash, OH, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiff's motion for summary judgment (doc. 13), the Defendants' response (doc. 15), and the Plaintiff's reply (doc. 16).

This case involves the issues of (1) whether the Defendants infringed upon the Plaintiff's copyright and (2) whether the Plaintiff breached his contract with the Defendants.

## BACKGROUND

On February 11, 1989, the Plaintiff, Craig Elbe, contracted with one of the Defendants, Bryan Adkins, to provide photographic services for the Adkinses' wedding on May 20, 1989. Under the contract, Mr. Elbe was to photograph the Adkinses' wedding and Mr. Adkins was to purchase at least twenty-five of the wedding photographs from Mr. Elbe. The contract between the Adkinses and Mr. Elbe specified that "all rights [to the photographs, proofs, negatives, etc. are] reserved" to the photographer. Plaintiff's ex. A at ¶ 16 (attached to doc. 13). The total cost of photographing the wedding and providing the twenty-five photographs was $475.75. The Adkinses could purchase additional photographs if they desired.

Mr. Elbe attended the wedding as scheduled and photographed the event as planned. Before delivering the proofs to the Adkinses, Mr. Elbe placed a copyright symbol on the reverse side of each of the proofs and also affixed his name on the proofs. Mr. Elbe then presented approximately 170 photographic proofs to the Adkinses for them to examine and select the twenty-five photographs to order. The Adkinses returned the proofs to Mr. Elbe along with their selection of twenty-five photographs around June 20, 1989. The Adkinses later ordered an additional twenty-five photographs. After the Adkinses returned the proofs, Mr. Elbe examined the proofs and noticed that the numbering he had placed on the proofs had been removed. Mr. Elbe's numbering had been replaced with permanent numberings that could not be removed.

As a result, Mr. Elbe suspected that the Adkinses had copied or counterfeited the proofs. Mr. Elbe confronted Bryan Adkins who admitted to having made counterfeit photographs and negatives. Mr. Adkins stated in his affidavit that he copied the proofs in order to have them available if Mr. Elbe went out of business. Mr. Adkins copied the proofs at work. *Id.* Mr. Adkins was a summer employee at the Medical Center of Information and Communications at the University of Cincinnati. His employment consisted of making duplications of various copyrighted and non-copyrighted materials. *Id.* Mr. Adkins later swore that his copying of materials at work led him to believe that his work could be copied if it was not used for personal profit. *Id.*

Around August 3, 1989, the Adkinses returned the counterfeit photographs and negatives to Mr. Elbe. Mr. Elbe counted the counterfeits and found that Mr. Adkins had counterfeited at least 120 photographs and 87 negatives. Subsequently, Mr. Elbe registered the photographs with the U.S. Copyright Office on March 22, 1990.

Mr. Elbe believed that Mr. Adkins' unauthorized copying of the photographs relieved him from having to perform any

remaining obligations under the contract. Therefore, Mr. Elbe never provided any of the photographs that Adkinses had ordered, despite receiving $684.75 from Adkins on the contract. The outstanding balance under the contract is $140.21 owed to Mr. Elbe.

On January 9, 1990, the Adkinses, seeking the photographs of their wedding, sued Mr. Elbe in the Hamilton County Common Pleas Court and sought specific performance of the contract. Mr. Elbe responded by suing Adkins on April 9, 1990 in this court claiming that the Adkinses had infringed on his copyright interests in the photographs. The Adkinses counterclaimed asking for specific performance on the contract.

## DISCUSSION

### A. Whether the Adkinses violated Mr. Elbe's copyright interest

■ This Court must first determine whether the copying of the wedding photographs infringed upon Mr. Elbe's copyright interest in the photographs. Under the United States' copyright law, the creator of pictorial works has a protectable interest in the material she produces. 17 U.S.C. §§ 106, 113 (1991). A pictorial work includes a photograph. 17 U.S.C. § 101. An interest in the photographs arises when the work is created, which the Code defines as the time when the work "is fixed in a copy ... for the first time." *Id.*

As a prerequisite to establishing a protectable copyright, the creator of the work must notify the potential public that he has a copyright over the work. 17 U.S.C. § 401. The creator may meet this requirement by affixing a copyright symbol in a place on the work that gives reasonable notice of the claim of a copyright. *Id.* In addition, a copyright must identify the creator and the date of creation. *Id.*

In the instant matter, Mr. Elbe fulfilled the requirements that are necessary to own the copyright of the photographs. Mr. Elbe affixed a copyright symbol, his name, and the date on the back of the photographs. Thus, Mr. Elbe provided reasonable notice of his copyright claim. Moreover, the Adkinses do not dispute in their opposition to the motion for summary judgment that Mr. Elbe was the copyright owner of the photographs.

The United States Code entitles Mr. Elbe to exclusive rights as a copyright owner. Under 17 U.S.C. § 106(1), Mr. Elbe has the exclusive right to reproduce the photographs. Mr. Adkins admits that he removed Mr. Elbe's numbering system on the proofs and then copied them. Accordingly, as there are no disputes that the Adkinses infringed upon Mr. Elbe's copyright, Mr. Elbe is entitled to summary judgment on this issue.

The Adkinses assert, however, that Mr. Elbe is not entitled to an award of statutory damages or attorney fees under the statute (Brief for Defendants, doc. 15, at 3), that Elbe has experienced no actual harm from any infringement (*Id.* at 4), and that any infringement was not willful (*Id.* at 6).

When an owner of a copyright has had his rights infringed upon, two independent means of recovery are available to him. First, a copyright owner who does not register the work has copyright protection limited to damages equalling the creator's actual harm plus the infringer's profits. 17 U.S.C. § 504(a). Second, a copyright owner who registers the work, is entitled to statutory damages and attorney fees. *Id.*

■ The United States Code establishes when a court should allow statutory damages and attorney fees for copyright infringements:

In any action under this title ... no award of statutory damages or of attorney's fees ... shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. Thus, the owner of a copyright may obtain statutory damages only by registering the copyright before any infringement, or by registering it within three months after publishing the work.

In the instant matter, the Adkinses infringed upon Mr. Elbe's copyright in July 1989. Mr. Elbe, however, did not register his copyright until March 1990, nearly eight months after the alleged copyright infringement. Consequently, Mr. Elbe does not qualify for statutory damages or attorney fees because he did not register the copyright before the alleged infringement. Nor did he register the copyright within three months after he published his photographs. *See Evans Newton, Inc. v. Chicago Systems Software*, 793 F.2d 889 (7th Cir.1986), *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 383 (1986) (denying attorney fees and punitive damages where copyright was not timely registered); *Johnson v. University of Virginia*, 606 F.Supp. 321, 324, 325 (D.Va.1985) (noting that attorney fees and statutory damages were precluded by the Code where copyright for photographs was not registered in time). Accordingly, Mr. Elbe has no statutory damages.

We must now consider whether Mr. Elbe may recover other damages. The Code allows the copyright holder to recover the profits gained by the infringer. 17 U.S.C. § 504. However, no evidence has been presented to the Court that the Adkinses personally profited from unlawfully reproducing Mr. Elbe's photographs and reselling them.

■ The Court must still consider whether Mr. Elbe can obtain actual damages. The Adkinses claim that they did not knowingly violate the copyright laws. Under the Code, however, a court presiding over the creator's copyright action should give no weight to a defendant's claim of innocent infringement, except as otherwise permitted under the Code. 17 U.S.C. § 401(d). Hence, the Adkinses' claims of innocent purpose and unintentional infringement are without weight in considering Mr. Elbe's actual damages. *See id.*

Mr. Elbe claims actual damages totaling $16,466.00 from the Adkinses infringement based on the following:

1. 120 counterfeit photographs priced in the contract at $11.00 per photograph   = $ 1,320.00
2. 87 counterfeit negatives priced by Mr. Elbe at $150.00 per negative   = $13,050.00
3. 133 photographs (destroyed when Mr. Adkins re-numbered them with permanent ink) priced in the contract at $12.00 per photograph   = $ 1,596.00
4. 5 hours of time for Elbe to photograph the wedding, as provided for in the contract, priced in the contract at $100.00   = $ 500.00

$16,466.00

---

■ In addition to the $16,466 loss, Mr. Elbe also claims damages for attorney fees resulting from his having to protect his copyright through litigation. The Court views this request by the Plaintiff as an attempt to circumvent 17 U.S.C. § 412, a provision that specifically precludes an award of attorney fees if the copyright owner failed to register the copyright in time. As discussed above, Mr. Elbe failed to register the copyright in time. Thus, the Court rejects Mr. Elbe's claim for attorney fees.

■ In his claim for actual damages, Mr. Elbe seeks $500 for the time he spent photographing the Adkinses' wedding. The contract between Mr. Elbe and the Adkinses provided that Mr. Elbe would furnish professional photographic services and twenty-five photographs to Adkins at the price of $475.75. The contract did not require any additional compensation for the time Mr. Elbe spent photographing the

wedding. Therefore, since the contract already implicitly included Mr. Elbe's time spent photographing the wedding, this Court finds that the Adkinses have already compensated Mr. Elbe for his time.

Next, we must consider whether the remainder of Mr. Elbe's claim really constitutes his actual damages. Mr. Elbe first used the $16,466 figure for his actual damages in his reply brief. Consequently, the Adkinses have not had the opportunity to respond to this figure. Therefore, the amount of Mr. Elbe's actual damages are not yet clear to the Court.

Accordingly, this Court grants the Plaintiff's motion for summary judgment regarding the claim of copyright infringement. The Court will set a hearing to determine Mr. Elbe's actual damages.

B. Whether Mr. Elbe committed a material breach of contract

The remaining issue before the Court is the Plaintiff's motion for summary judgment on the Defendants' counterclaim for breach of contract. In their counterclaim, the Adkinses ask the Court to specifically enforce their contract with Mr. Elbe. Mr. Elbe argues that Mr. Adkins breached Paragraph 16 of their contract which provided that the Plaintiff reserved all rights in his photographs. Mr. Elbe contends that Mr. Adkins unlawful duplication of the photographs constituted a material breach of the contract. As a result, Mr. Elbe concludes that Mr. Adkins' breach releases him from his duty to provide the photographs.

■ Initially, the Court must determine whether the contract between Mr. Elbe and Mr. Adkins was a contract for the sale of goods or a contract for the furnishment of services. The seminal case of *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir.1974) stated that the test to distinguish a goods versus services contract is whether the predominate purpose in the contract "is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom)." *See also* *Lost Nation North Apartments v. Alride Builders Service*, No. 43927, 1982 WL 5922 (Cuyhoga Cty.Ct.App. September 23, 1982) (using *Bonebrake* test to distinguish a contract for goods from a contract for services).

In the case before the Court, the predominate purpose of the contract was to have Mr. Elbe take pictures of the Adkinses' marriage. One court found that an artist's contract to paint a picture constituted a service. *National Historic Shrines Foundation v. Dali*, 4 U.C.C. Rep. 71 (N.Y.Sup. Ct.1967) (contract for a painting is a service). Similarly, Mr. Elbe's and Mr. Adkins' contract was also a service contract. The predominate purpose of the Elbe–Adkins contract was to have Mr. Elbe photograph the Adkinses' wedding. Thus, just as an artist's labor is intimately involved in a contract to paint a picture, so too is a photographer's labor intimately involved in a contract to photograph a wedding. Thus, the Elbe–Adkins contract was a service contract.

■ Service contracts are not governed under the Uniform Commercial Code. *See* Ohio Rev.Code § 1302.02 (1990) (adopting Uniform Commercial Code § 2–102). The doctrine of substantial performance applies to service contracts. John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 11–22 (2d ed. 1977). As one court aptly stated, "[t]he 'substantial performance doctrine provides that where a contract is made for an agreed exchange of two performances, one which is to be rendered first, substantial performance rather than exact, strict or literal performance by the first party of the terms of the contract is adequate to entitle the party to recover on it." *Brown–Marx Associates, Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1367 (11th Cir.1983).

■ In the case before the Court, the doctrine of substantial performance may be applicable. Indisputably, the Adkinses breached paragraph 16 of the contract by illegally altering and duplicating the photographic proofs. However, the main thrust of the contract was the exchange of photo-

**112**

graphs for money. Mr. Adkins has paid a sum of money to Mr. Elbe. Thus, but for the illegal alteration and duplication, Mr. Adkins has substantially performed the contract. Accordingly, the jury has the responsibility to determine the factual question of whether Mr. Adkins substantially performed the contract.

■ Moreover, the contract analysis of the Court regarding the Defendant's counterclaim is particularly appropriate given the nature of the contract between Mr. Elbe and Mr. Adkins. Courts have recognized that contracts relating to marriage warrant special treatment. *See e.g., Deitsch v. The Music Co.*, 6 Ohio Misc.2d 6, 6 OBR 546, 453 N.E.2d 1302 (Hamilton Cty.Munic.Ct.1983) (allowing damages for emotional distress, inconvenience, and the diminution in value where a band failed to perform on a contract attendant to a wedding). Thus, despite Mr. Adkins' copyright infringement and consequent contract violation, there is an issue of fact as to whether Mr. Adkins substantially performed this contract involving marriage.

Accordingly, this Court denies Mr. Elbe's motion for summary judgment on the Adkinses' counterclaim for breach of contract.

## CONCLUSION

Accordingly, this Court grants in part and denies in part the Plaintiff's motion for summary judgment. This Court grants the Plaintiff's motion for summary judgment on the Plaintiff's claim for copyright infringement. A hearing will be set to determine the Plaintiff's actual damages and to decide whether the Defendants' substantially performed the contract.

Furthermore, Court denies the Plaintiff's motion for summary judgment on the Defendants' counterclaim for breach of contract.

SO ORDERED.