John and Lynn STANISLAWSKI,
D/B/A Northland Oak Frames
Plaintiffs,

v.

Karla J. JORDAN and Studio Designs
of Wisconsin, Inc., Defendants.

No. 2:03–CV–1022.

United States District Court,
E.D. Wisconsin.

Sept. 23, 2004.

Thomas M Bartell, Jr., Stupar Schuster & Cooper, Milwaukee, WI, for Catherine A. Young, Wade Mattice, Consolidated Defendants.

James F Boyle/Mollie Ambrose Newcomb, Boyle Fredrickson Newholm Stein & Gratz, Milwaukee, WI, for John Stanislawski, Lynn Stanislawski, Plaintiffs.

Michael J. Cohen/Catherine R. Grogan, Meissner Tierney Fisher & Nichols SC, Milwaukee, WI, for Acuity Mutual Insurance Co., Intervenor Plaintiff.

Alan H. Deutch, Deutch & Weiss, Glendale, WI, for Studio Designs of Wisconsin Inc., Karla J. Jordan, Defendants.

Daniel R. Johnson/Joseph A. Kromholz, Ryan Kromholz & Manion SC, Milwaukee, WI, for Bruce Martin, Bruce Martin, ThirdParty Plaintiffs.

Jeffrey Leavell/Kathryn R. Long, Jeffrey Leavell SC, Racine, WI, for West Bend Mutual Insurance Company, Movant.

### DECISION AND ORDER

RANDA, Chief Judge.

The plaintiffs in this case, John and Lynn Stanislawski (the "Stanislawskis"), come before the Court seeking a preliminary injunction to prevent the Defendants, Karla J. Jordan and Studio Designs of Wisconsin, Inc. ("Jordan" and "Studio Designs"; collectively, "the Defendants"), from selling decorative wood picture/photograph frames that infringe on their original and protected designs.

The Stanislawskis filed their complaint in this Court, on October 20, 2003, alleging both federal and state claims arising out of Jordan's purported unlawful advertisement and sale of protected, proprietary picture frame designs. Specifically, the Stanislawskis have brought claims under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, as well as Section 42 of the Lanham Act, 15 U.S.C. § 1125(a). They allege that the Defendants have engaged in false advertising and deceptive trade practices in violation of Wis. Stat. § 100.18. Additionally, the Stanislawskis have brought state law claims for common law misappropriation and unfair competition. On November 4, 2003, the Stanislawskis moved this Court to enter a preliminary injunction enjoining the Defendants from (1) making, distributing or selling any decorative wood picture frames that embody, or are based on, any of the Stanislawskis' frame designs, and (2) using photos of those same frame designs in the Defendants' advertising and from otherwise unfairly competing and falsely representing to the public that the Stanislawskis' frames were created by the Defendants.

On a procedural note, the Court acknowledges that it received submissions by the parties several months after the Stanislawskis filed their motion for injunctive relief. The Court, while recognizing the patience of the parties in waiting for this decision, did not consider the Stanislawskis' supplemental brief submitted on September 1, 2004. A party wishing to submit a supplemental filing must seek leave of the Court to file its brief. Absent such leave, supplemental filings will not be considered. Insofar as the Court did not consider the Stanislawskis' supplemental brief, the Court denies the Defendants' request to respond to the same.

## I. BACKGROUND

The Stanislawskis, a husband and wife, design, manufacture, and sell decorative wood picture frames. Their business, Northland Oak Frames, started in approximately 1992 and is located in North Prairie, Wisconsin. They have been designing and making frames since approximately 1994.

Studio Designs of Wisconsin, Inc. ("Studio Designs") is a self-described "contract manufacturer" and wholesaler of various merchandise, including candles, fragrant salts, and hair products. Prior to its interactions with the Stanislawskis, Studio Designs had developed a distribution network of independent business people who purchased products from Studio Designs and then, in turn, resold those items at retail. Jordan is the President of Studio Designs.

In the summer of 2002, the Stanislawskis entered into an oral agreement with Jordan whereby the Defendants would purchase the Stanislawskis' frames at a reduced price and then arrange to have the frames sold at various locations—usually at kiosks located in large shopping malls. As part of this agreement, the parties limited those venues at which Studio Designs or its customers could sell the frames in order to avoid any interference with pre-existing business relationships between the Stanislawskis and craft stores/fairs.

At some point in 2003, the parties' business arrangement became strained and, as a result, Jordan secured another manufacturer to produce engraved frames. Not surprisingly, the parties differ in their accounts of the underlying reasons that caused their business relationship to deteriorate.

The Stanislawskis claim that the Defendants began copying, reproducing and selling inferior copies of the Stanislawskis' original frame designs without their consent. The Stanislawskis state that, as a result of these actions, they, as well as other individuals, have seen numerous such "knock-off" frames at multiple locations. ("Knock-off" is the term utilized by the Stanislawskis presumably in reference to frames modeled on their purported original designs but not produced or marketed by them.) The Stanislawskis further claim that Jordan has expanded the sale of these knock-offs and intruded into sales outlets previously established by the Stanislawskis. They also allege that Jordan is using pictures of their original designs in marketing brochures even though consumers are actually being sold a different product—the knock-off frames.

Jordan contends that she had no choice but to seek another manufacturer of decorative frames. She alleges that, in 2003, the Stanislawskis began requesting proprietary information concerning the distribution network through which their frames were distributed and sold. The Stanislawskis, according to Jordan, sought the names and addresses of Studio Designs' independent distributors as well as the dates and sponsors of those arts and crafts shows at which the Stanislawskis' frames were to be sold. Jordan further claims that the Stanislawskis threatened to cease shipping their products unless she provided the requested information. Jordan states that, though some information was provided to the Stanislawskis, they demanded still more. Not wanting to release further information and concerned over the possibility that the Stanislawskis might halt their shipments of frames and thereby jeopardize Studio Designs' ability to fill outstanding orders, Jordan found an alternate manufacturer and began developing new artwork for incorporation into laser cut oak frames.

The frames, as identified by the Stanislawskis, are designed to fit into one of

several themes or collection of frames, such as "family/friends," "hobbies/interests," "dogs/pets," "anniversary/wedding," "sports," "hunting/fishing," and "wildlife." The frames at issue in this litigation may be divided into four groups. These groups correspond to the Stanislawskis' efforts to obtain copyright registration. The first group ("Group 1") contains four frame designs which have been registered with the United States Copyright Office, under the title "Frame Collection No. 1," Certificate of Registration No. VA 1–208–242 (effective September 26, 2003).[1] This group is comprised of four 11x14 inch frames entitled "Cruise," "Fire Truck," "NASCAR," and "Our Family." The Stanislawskis admit that they obtained copyright registration for these frames on an expedited basis in order to obtain protection that would allow them to commence the present lawsuit as quickly as possible. (Pls.' Reply Br. Supp. Mot. Prelim. Inj. at 3–4.) A second group of frames ("Group 2") entitled "Northland Oak Frames' 5x7 Frame Collection" contains approximately 136 frames sharing a common size of 5x7 inches. Frames in Group 2 exhibit various designs and ornamentation and are registered with the Copyright Office under registration number VA 1–209–461 (effective October 20, 2003). The third group

("Group 3"), "Northland Oak Frames' 11x14 Frame Collection," consists of 62 11x14 inch frames with various designs or ornamentation and was registered with the Copyright Office, effective October 20, 2003, under registration number VA 1–209–460. Though unclear, it appears as though the frames in Group 1 are a subset of the Group 3 frames; photos of the Group 1 frames appear in the registration materials for the Group 3 copyright application. Finally, there is a fourth group ("Group 4") of over two-hundred frames identified as "name" frames. Each of these frames contains a person's name carved or laser cut within the body of a frame which can then be used to display the identified person's picture.[2] The application for registration with the Copyright Office for the Group 4 frames was denied.

## II. ANALYSIS

 The Court begins its analysis with the understanding that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam) (emphasis in original) (quoting

---

1. According to 17 U.S.C. § 410(d), "[t]he effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office." The effective dates of the copyright registrations are found on the frame groups' respective registration certificates in the Appendix of Exhibits for Plaintiffs' Brief in Support of Their Motion for Preliminary Injunction.

2. The Court finds the Defendants' breakdown of each of the first three frame groups instructive:

Group 1 consists of:
3 frames containing art and

1 frame containing words and scroll type ornamentation.
Group 2 consists of:
44 frames containing words;
21 frames containing a word and a common symbol, such as a heart, drop, circle, ornamentation, etc.;
6 frames containing prose;
7 frames containing words and art;
4 frames containing a symbol, such as the fire/rescue symbol; and
54 frames containing art.
Group 3 consists of:
10 frames containing words;
2 frames containing prose;
1 frame containing a symbol;
3 frames containing words and art; and
46 frames containing art.

11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2948 at 129–30 (2d ed.1995)). A party seeking a preliminary injunction must substantially prove (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if the preliminary injunction is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992) (citing *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986)). If either of these criteria is not satisfied, a court's analysis ends and the request for a preliminary injunction should be denied. *Abbott Labs.*, 971 F.2d at 11. If the movant satisfies both of these requirements, the Court must then consider "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and also the impact on the public interest or non-parties of granting or denying the injunction. *Id.*, at 11–12 (citing *Lawson Prods., Inc.*, 782 F.2d at 1433; *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387–88 (7th Cir.1984)). Next, the Court will weigh all four of the above-mentioned factors and utilize a "sliding scale" approach in deciding whether to issue the injunction. *Abbott Labs.*, 971 F.2d at 12 (citing *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir.1986)).

### A. Copyright Infringement

 The Court begins its application of the above standard by considering the Stanislawskis' likelihood of succeeding on the merits of their claim for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* To prevail on a claim of copyright infringement, a movant must prove (1) ownership of a valid copyright, and (2) copying of original elements, or infringement, of the work. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Absent direct evidence, copying may be inferred through a showing that (a) the alleged copier had access to the work and (b) the accused's work is substantially similar to the copyrighted work. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) *overruled on other grounds by Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423 (7th Cir.1985).

 Registration certificates are prima facie evidence of the validity of a copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c); *see also Sandwiches, Inc. v. Wendy's Int'l, Inc.*, 654 F.Supp. 1066, 1071 (E.D.Wis.1987). However, the presumption of ownership and validity is a rebuttable one. *Id.* The Stanislawskis, as part of their Appendix of Exhibits to their motion for injunctive relief, have provided the Court with copies of Certificates of Registration issued by the Copyright Office as well as copies of the materials deposited with the copyright applications. (*See* App. Exs. Pls.' Br. Supp. Mot. Prelim. Inj.) (hereinafter "App. Exs. Pls.") These certificates provide proof of registration for the frames in Groups 1, 2, and 3. As was mentioned previously, the registration application for Group 4—the "name" frames—was denied. Therefore, the Stanislawskis presumptively have ownership in the frames of Groups 1, 2, and 3 based on valid copyright registration. (The Court will discuss Group 4 more extensively *infra.*) This Court's inquiry into the "ownership" prong of the infringement action, however, must proceed further.

 The Defendants attempt to rebut the Stanislawskis' claims to ownership. Specifically, they state that the Stanislawskis' work is derivative and, therefore, not original, and, insofar as the Stanislawskis are not authors of their claimed

works, they made fraudulent misrepresentations in their various copyright applications. (*See* Br. Defs., Karla J. Jordan and Studio Designs of Wisconsin, Inc., Opp'n Pl.'s [sic] Mot. Prelim. Inj. at 8) (hereinafter "Opp'n Br.") The central assertion undergirding these contentions is Jordan's claim that, during the development of the business relationship between the two parties, Lynn Stanislawski, on several occasions, explained to Jordan that she obtained the artwork for her frame designs from "clip art" contained on CD's or downloaded from the internet. (*See* Opp'n Br. at 6; Decl. Def., Karla J. Jordan, Opp'n Pls.' Mot. Prelim. Inj. at 4, ¶ 11) (hereinafter "Def.'s Decl.") As a consequence, the argument goes, the Stanislawskis will have a difficult time establishing valid copyright protection or ownership, and, therefore, success on the merits of an infringement claim is unlikely.

The Stanislawskis, in turn, have countered by providing samples of the artwork that Lynn Stanislawski claims she created and upon which they based certain of their frames' designs. (*See* Second Decl. Lynn Stanislawski at 3–9.) As best the Court can determine, the submitted artwork is identifiable in approximately sixteen of the frames for which the Stanislawskis have received copyright protection.[3] Additionally, Lynn Stanislawski submitted an initial declaration in which she asserts that all of Northland Oak Frames' frames were based on her own original artwork. (*See* Decl. Lynn Stanislawski at 1, ¶ 3.) This claim is consistent with the information provided on the copyright registration applications which do not identify the frames as derivative works. (*See* App. Exs. Pls.)

The Stanislawskis, in their Reply Brief, further attack the Defendants' claims that the frames are derivative works. The Stanislawskis say that such an allegation is conclusory and unsupported by any proof. (Pls.' Reply Br. Supp. Mot. Prelim. Inj. at 3) (hereinafter "Reply Br.") They further point out that the Defendants have not produced any documents or exhibits showing any type of clip art that might have been used and have not identified a single frame design that is supposedly based on clip art. *Id.* These points are well-taken. Though the burden is on the Stanislawskis to provide sufficient grounds in support of their request for injunctive relief, the Court appreciates that it is very difficult to prove or establish a negative (i.e., that the frame designs were *not* derived from CD's, clip art or other such sources). Though Lynn Stanislawski's statement is potential evidence that may be used against the Stanislawskis, the Court, at this stage, gives little weight, absent something more, to the Defendants' allegations of unoriginality. Therefore, the Court, for purposes of the motion pending before it and based on the Stanislawskis' declarations, their submitted sketches, and the certificates of copyright registration, finds that the Stanislawskis have sufficiently shown that their designs are original.

 The Court now addresses the frames in Group 4. These are the frames for which the Copyright Office rejected the Stanislawskis' application. The Stanislawskis insist, nevertheless, that despite

---

**3.** The sample sketches/drawings found in the Second Declaration of Lynn Stanislawski are not "mapped" to their corresponding frames. In total, seven sketches or preliminary drawings are included in the declaration. Based on the Court's own comparisons, the designs of these sketches appear in the following Northland Oak Frames' frames: "Cruise," "Fire Truck" and "NASCAR" (Group 1); "Cat," "Cruise–Ship–(Palm Trees)," "Cruise Ship-(No Trees)," "Fire Rescue," "Motorcycle," "Snowmobile," "Snowmobile–Vertical," "Hunter Deer," "Hunter Duck" (Group 2); "Cruise," "Fire Truck," "Motorcycle," "NASCAR," "Snowmobile," "Deer Hunter," and "Duck Hunter" (Group 3).

the denial, they are permitted to sue for infringement of the designs in that Group pursuant to 17 U.S.C. § 411(a). (*See* Reply Br. at 4.) The Stanislawskis' application for registration of the name frames is dated October 16, 2003. (*See* App. Exs. Pls.) On this date, the application, deposit, and fees were delivered to the Copyright Office. (*See* Decl. James F. Boyle at 1, ¶ 2.) By a letter dated October 22, 2003 and directed to James F. Boyle, the Stanislawskis' attorney in the copyright registration matter, the Copyright Office denied copyright registration for the frames of Group 4. (Decl. James F. Boyle at 4–5.) The Stanislawskis filed their complaint with this Court on October 20, 2003—two days prior to the issuance of the Copyright Office's denial letter.

The Stanislawskis are only partially correct in their assertion that they may institute an action for infringement despite the rejection of their application. Section 411(a) of Title 17 of the United States Code states:

> Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form *and registration has been refused*, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register

may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.

17 U.S.C. § 411(a) (emphasis added). This statutory provision explicitly provides that an applicant may bring an action for infringement where the application has been submitted *and refused*. Failure to register a copyright or to have an application refused divests a court of subject matter jurisdiction. *See Corbis Corp. v. UGO Networks, Inc.*, 322 F.Supp.2d 520, 521 (S.D.N.Y.2004).

■ Though it is the duty of the Stanislawskis to properly allege jurisdictional facts (*see McNutt v. Gen'l Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), federal courts always retain the ability to examine their jurisdictional authority to hear an action. Such reviews may be undertaken *sua sponte. See Hay v. Ind. State Bd. of Tax Commissioners*, 312 F.3d 876, 879 (7th Cir.2002) (citing *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). In order for the Court to have jurisdiction to hear an infringement action with respect to the Group 4 frames, the registration application must have been refused prior to filing the suit. However, the present action was filed before the Group 4 frames' application for copyright protection was refused. Accordingly, the Stanislawskis' Copyright Act infringement action with regard to the name frames is dismissed for lack of subject matter jurisdiction.[4]

---

4. The Court also does not consider a request for injunctive relief for the Group 4 frames—or any of the other Groups—under state law theories of misappropriation or misrepresentation. These issues were not briefed in the

Stanislawskis' initial supporting brief and were only addressed in conclusory, general fashion in their Reply Brief. Such conclusions are insufficient grounds to support a grant of injunctive relief.

■ Before moving on to the second prong of the infringement analysis, the Court must conduct an intermediate inquiry regarding what elements or aspects of the Stanislawskis' frames are protected by their copyright registrations. *See Boisson v. Banian, Ltd.,* 273 F.3d 262, 268 (2nd Cir.2001). This critical inquiry examines both what is original in the Stanislawskis' work as well as what may not be infringed upon. Though the Stanislawskis' certificates of copyright registration constitute prima facie evidence of the validity of their copyrights and the originality of their works, copyright protection only extends to a particular expression of an idea, not to the idea itself. *Id.* As the Defendants correctly point out, copyright does not mean that every element of a work is protected. (Opp'n Br. at 10.) Therefore, the Court must inquire into what, exactly, has been afforded copyright protection.

The Stanislawskis readily acknowledge that cut-out shapes, words or common phrases are not copyrightable. They argue, however, that their unique combination of these common elements is the original spark that justifies their copyright protection and defines its scope. The Defendants vivisect the frames into their component parts and, based upon the numerous common elements found therein, declare that any protection afforded by the copyrights must be "thin" and only prohibit virtual identical duplication. The Court breaks these differences down into two discrete inquiries. First, the Court will examine whether there are separable, original elements distinguishable from the utilitarian aspect of the frames. Second, the Court will consider whether certain of these elements or some other original element is protectable.

Curiously, the parties have not briefed the implications of the frames' proper designation as "useful articles" under the Copyright Act. The Court finds this inquiry both necessary and useful for the resolution of the pending motion. Section 101 of Title 17 of the United States Code defines "useful articles" as any "article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Furthermore, "[a]n article that is normally a part of a useful article is considered a 'useful article'." *Id.* The frames at issue in this case are clearly "useful articles" within the meaning of the statute; frames are used to hold and display photographs.

■ That same provision of the Copyright Act further explains that copyright protects "useful articles" only insofar as their pictorial, graphic, or sculptural features can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.[5] *Id.* The statutory language confirms the Defendants' contention that the Stanislawskis cannot claim copyright protection for the "picture cut-outs" insofar as they are utilitarian in nature, i.e., they are needed so that a picture can be displayed in the frame. (Opp'n Br. at 11.) Furthermore, copyright protection is clearly limited to those aspects of the frames' designs

---

5. The relevant provision, in its entirety, reads: "Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

that exist apart from their utilitarian value.

A recent Seventh Circuit decision, *Pivot Point International Incorporated v. Charlene Products Incorporated*, addressed the proper method of analysis to be utilized by courts when assessing the copyright protection of useful articles with artistic aspects. 372 F.3d 913 (7th Cir.2004). In that case, the Seventh Circuit considered whether an artist's design of a model's "hungry look" face on mannequin heads used for hair styling/cosmetic training was protectable under copyright. The Seventh Circuit, assuming the mannequin head was a useful article, proceeded to examine how various courts have drawn the potentially fine line between the utilitarian and artistic aspects of a work when analyzing copyrightability. The Seventh Circuit ultimately held that "conceptual separability exists ...when the artistic aspects of an article can be 'conceptualized as existing independently of their utilitarian function.'" *Pivot Point Int'l Inc.*, 372 F.3d at 931 (quoting *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 418 (2nd Cir.1985)). The Seventh Circuit explained that "[i]f the elements do reflect the independent, artistic judgment of the designer, conceptual separability exists." *Id.* By contrast, useful and aesthetic elements are not conceptually separable when the design of the useful article is determined as much by utilitarian dictates as by aesthetic choices. *Id.* Applying this standard, the Seventh Circuit observed that it was possible to envision a face without the mannequin's "hungry look" features; the features were conceptually separable from any utilitarian function of the mannequin's head. The Seventh Circuit, therefore, found that the particularized expression embodied in the "hungry look" face was subject to copyright protection. *Pivot Point Int'l Inc.*, 372 F.3d at 931.

Applying the *Pivot Point* analysis to the present situation, the Court finds that certain elements of the Stanislawskis' frames are certainly separable from the utilitarian functions of the frames. In fact, some of the images could even be physically separated from the frames and still leave a functional frame intact. *See Pivot Point Int'l, Inc.*, 372 F.3d at 922 ("Certainly one approach to determine whether material can be 'identified separately,' and the most obvious, is to rely on the capacity of the artistic material to be severed physically from the industrial design.") For example, the image of a cruise ship or a bowling ball crashing into bowling pins (*see* App. Exs. Pls.) is separable from the frame into which it is engraved. As such, those particular artistic elements are severable and should not be considered simply functions of the frames' utilitarian nature. Furthermore, these artistic elements are not dictated by utilitarian concerns (i.e., displaying the picture) and seem to have been predominantly the results of aesthetic choices. *See Pivot Point Int'l Inc.*, 372 F.3d at 931 ("Conversely, when the design of a useful article is 'as much the result of utilitarian pressures as aesthetic choices,' the useful and aesthetic elements are not conceptually separable.") (citations omitted).

The *Pivot Point* analysis, however, raises two issues when applied to the current situation. First, if the Court were to remove the engraved or carved words, symbols, or shapes—the artistic, non-useful aspect of the works—from one of the many frames that utilize such words or shapes, obviously a useful article, the frame, would remain. While the artistic element is separable from the useful article, that element, once removed from the frame, would receive little protection. For example, the "Fire Rescue" symbol is in the public domain and cannot be copyrighted. *See* 37 C.F.R. § 202.1(a). So too, words like

"mother" and "soccer" are clearly not protected. *Id.* The Defendants raise this very point in their Brief: "Because names, titles, and slogans are not afforded copyright protection, any frame incorporating a name, title or slogan, without more, is not entitled to copyright protection." (Opp'n Br. at 10.) The Defendants make this same argument for virtually every element in the Stanislawskis' frames from common symbols to shapes and words. The issue is whether these elements are protectable as the original, artistic expressions of common elements insofar as they inhere in an original, artistic arrangement even though they may enjoy less, if any, protection when segregated from the other elements found in the frame.

A second question arises regarding whether the Court should separate the frames' elements, as *Pivot Point* requires, or utilize a different methodology which does not divide the works into their component parts. *See Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 939 (7th Cir.1989) (reiterating the Seventh Circuit's position that dissection of subject matter into copyrighted and unprotected elements is generally rejected in favor of examining the total concept and feel of the copyrighted work). The Court now seeks to resolve these two issues.

▪ The *Pivot Point* analysis allows the Court to determine whether the frames contain aspects or elements that are not dictated by the function of the frames (i.e., to display pictures). Such a determination is necessary to properly include the frames within those "pictorial, graphic and sculptural works" which may be protected by copyright even though they may also be "useful articles." If the Court were unable to separate out any elements from the frames, they would simply be "useful articles" and not "pictorial, graphic, or sculptural" works. *See* 17 U.S.C. § 101. In that instance, the Court's inquiry into copyright protection would be at an abrupt end. However, where a work is comprised of several, individually common elements, the arrangement of those elements may itself be an element of the work warranting protection. Therefore, when looking at the Stanislawskis' frames, the arrangement of common elements may be an original and protectable artistic element even if the respective elements are themselves common and unprotectable. *See Reader's Digest Assn., Inc. v. Conservative Digest, Inc.,* 821 F.2d 800, 806 (D.C.Cir.1987); *Amplex Mfg. Co. v. A.B.C. Plastic Fabricators, Inc.,* 184 F.Supp. 285 (E.D.Pa.1960).

Furthermore, the Court sees no tension between the "conceptual separability" analysis of *Pivot Point* and the Seventh Circuit's stated disfavor for dissecting works into copyrighted and unprotected elements. *Pivot Point* was centrally concerned with whether a particular useful article's artistic aspects could be copyrighted. By distinction, the Seventh Circuit's counsel against dissection of works is a corollary to the "ordinary observer" test and is relevant when a Court considers copyrighted works for possible infringement. *Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 939 (7th Cir.1989); *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 614 (7th Cir.1982). The Court uses the "ordinary observer" test to compare those elements or combination of elements that are copyrighted with supposedly infringing works. In sum, identifying the various elements in the Stanislawskis' frames enables the Court to identify them as something more than "useful articles." The "ordinary observer" test will allow the Court to determine whether the Defendants have infringed on the protectable individual elements as well as the original designs of those frames.

The Court now considers the second prong of the copyright infringement analysis to determine if there has been copying or infringement. Such infringement may be shown by demonstrating that the alleged copier had access to the work and that the alleged copier's work is similar to the copyrighted work. *Atari, Inc.,* 672 F.2d at 614. It is undisputed by the parties that the Defendants had access to the Stanislawskis' frames. As part of the agreement between the two parties, Jordan would buy frames from the Stanislawskis and either sell those items herself or distribute them to other vendors. (Br. Supp. Pls.' Mot. Prelim. Inj. at 4–5; Opp'n Br. at 2.) The Defendants have provided receipts which clearly demonstrate their access to the Stanislawskis' frames. (Def.'s Decl.)

Furthermore, the information provided by the Stanislawskis supports a finding of substantial similarity between their frames and those of the Defendants. The Stanislawskis have provided photographs that, they claim, suggest the Defendants are selling exact duplicates of some of their frame designs. (App. Exs. Pls., Ex. E; Second Decl. Lynn Stanislawski at 10, 11.) In such instances, the Court's inquiry is made simple. Where a virtual duplicate is presented to the Court, there is no need to break down the copyrighted piece to determine what is, and what is not, protected. *See Atari, Inc.,* 672 F.2d at 615, n. 6 (citing E. Kitch & H. Perlman, *Legal Regulation of The Competitive Process* 665 (2d ed.1979) (suggesting that the determination whether protected elements have been copied is undertaken when the alleged infringing work is not a duplicate)). Furthermore, some of the photographed frames belonging to the Defendants show only minor, trivial differences—in background color, for example—when compared to the Stanislawskis' designs. (*See* App. Exs. Pls., Ex. F; Second Decl. Lynn Stanislawski at 10, 12.) Where the rest of the frame is virtually identical, such trivialities are given little weight by the Court and will not defeat a finding of infringement. *See Roulo,* 886 F.2d at 940 (stating that the minor differences incorporated by the defendant to prevent a mirror image copy of the plaintiff's work are insignificant in light of the nearly identical composition and appearance of both products).

The Court further notes that the Defendants have not disavowed owning or creating the alleged knock-off frames photographed by the Stanislawskis. Instead, they have suggested that certain of the depicted frames are "most probably Plaintiffs." (Opp'n Br. at 16.) While the Court supposes the frames, theoretically, could have come from a third party (as the Defendants suggest), the Defendants could just have easily stated that the frames were neither created nor sold by them. Similarly, the Defendants have not denied having a business relationship with the "Frameworks" entities where the Stanislawskis claim they have seen the knock-off frames for sale. While the Defendants have stated that, going into 2003, they possessed an outstanding inventory of the Stanislawskis' frames (Opp'n Br. at 16), the invoices provided by the Defendants do not provide any support for this claim even though they should have ready access to such information.

To further explain its finding that the Stanislawskis have shown a likelihood of succeeding on their infringement claim, the Court proceeds to describe two photographic comparisons of frames, identified as Exhibits D and G, in the Plaintiffs' Appendix of Exhibits. The two frames pictured in Exhibit D appear to have the same perimeter dimensions as evidenced by rulers photographed below each frame. Each frame has a carving of a cruise ship embedded in a semicircle located in the lower left-hand portion of the frames. The

Defendants' frame, however, has an additional partial semicircle above the carving of the cruise ship. Also, each frame has seven geometric cut-out shapes in the frame for the purpose of displaying photographs therein.

Along with these similarities—the most notable being the virtually identical carving of the cruise ships—the frames contain certain differences. The Stanislawskis' frame has a carving of two palm trees on an island set against water in the upper right hand corner of the frame. The Defendants' frame has no such image. Further, the Stanislawskis' frame contains two circles among its geometric picture spaces, whereas the Defendants' picture spaces consist solely of ovals, rectangles and squares. Though both frames contain seven such cut-out shapes, the arrangement of these geometric shapes differs on both frames. Of the seven shapes that appear on the Stanislawskis' frame, three appear in the same position on the Defendants' frame.

The Court, for purposes of this preliminary motion, finds the two above-described frames to be substantially similar. First, both frames utilize virtually identical drawings of cruise ships—an artistic element which the Stanislawskis claim is original and protected. The cruise ships are engraved in the same proportions using virtually identical lines, and dots. Only the thickness of the lines seems to differ. Further, the cruise ship etchings are set at the same angle and appear in the exact same location in each frame. Though different shapes are used for the picture cutouts, the arrangement of those shapes looks very similar. Considering the frames as a whole, they seem substantially similar such that an ordinary person would likely conclude that unlawful appropriation

had occurred. *See Atari, Inc.*, 672 F.2d at 614. The Defendants' slight rearrangement and modification of the elements will not circumvent a finding of substantial similarity.

Now the Court considers Exhibit G. The Stanislawskis' frame, as pictured in Exhibit G, contains a centered rectangular box near the bottom of the frame containing the words "Our Family" in cursive. A relatively narrow linear band of decorative ornamentation appears directly above this rectangular box as well as on both the left and right sides of the box leading almost to the vertical edges of the frame. A line of this ornamentation also appears near the center of the upper edge of the frame. The frame contains eight geographic shapes or cut-outs in which to place photographs: four rectangles form something of a cross shape in the center of the frame with ovals filling in the open corners created by this "cross."

The "Defendant's Frame"—which the Defendants acknowledge as a copy of their newly designed "Our Family" frame—also contains the words "Our Family" in cursive in a roughly centered rectangular box near the bottom of the frame. The cursive type, however, is different from the style in the Stanislawskis' frame. The Defendants' frame has only isolated ornamentation directly on either side of the rectangular box containing the writing. The ornamentation does not extend to the edge of the frame, nor does it appear at the top of the frame. The geometric shapes differ somewhat in size from those in the Stanislawskis' frame but are arranged in an identical manner. Again, apart from certain minor differences, the two frames seem to be substantially similar.[6]

---

**6.** The Court even finds such substantial similarity between those works that the Defendants acknowledge that they have created (*see*

Def.'s Decl., Exs. 1–3) and those similarly-themed frames designed by the Stanislawskis (*see* App. Exs. Pls., Exs. D, E, & F).

The Defendants maintain that any protection that the Stanislawskis have secured for their frames is "thin" and precludes only virtually identical copying of their works. In support of their position, the Defendants have cited to a Ninth Circuit case, *Satava v. Lowry*, 323 F.3d 805 (9th Cir.2003), which they believe provides support for this contention. The Court interprets *Satava* somewhat differently.

In *Satava*, the Ninth Circuit wrestled with "the faint line between unprotected idea and original expression in the context of realistic animal sculpture." Satava was a glass artist who specialized in creating "glass-in-glass jellyfish sculptures" and registered several of his glass sculptures with the Copyright Office. The defendant in that case, Lowry, saw Satava's work and began creating his own "glass-in-glass jellyfish sculptures." Satava, after seeing some of Lowry's work, sued for copyright infringement. The Ninth Circuit stated that no copyright protection could be afforded "to the idea of producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow from the idea of such a sculpture." *Satava*, 323 F.3d at 810.

First, this Court emphasizes that the issue addressed in *Satava* was carefully circumscribed. The Ninth Circuit itself framed the issue as an attempt to "locate the faint line between unprotected idea and original expression *in the context of realistic animal sculpture.*" *Satava*, 323 F.3d at 807 (emphasis added). The Ninth Circuit found not only the individual elements, but even the combination of those elements to be unprotected. *Id.* at 811. In other words, those elements that are natural to jellyfish physiology could not be protectable. *Id.* at 810. This reasoning is sound. An artist cannot protect an element of his realistic art that is inherent in an animal's physiology. One could no more copyright the shape of oak leaf or the shape of a horse. However, the Ninth Circuit did hold that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Id.* at 811.

Though this Court is not bound by the Ninth Circuit's ruling, it finds *Satava* instructive. The Court acknowledges that, just because the Stanislawskis engrave a cruise ship on their frames, others are not precluded from also engraving cruise ships on their own frames. However, copyright can protect one's unique expression of a cruise ship with unique details X, Y and Z, just as copyright can protect a unique combination of elements. The key, this Court maintains, to the *Satava* court's finding that the plaintiff maintained only a "thin" degree of protection lies in the subject of his art: jellyfish. There are certain physiological characteristics inherent in jellyfish that will be present in any attempt to portray the sea creatures. Similarly, there are certain aspects inherent in picture frames—most obviously openings in which to hold pictures—which cannot be monopolized. However, unique artistic elements and/or their arrangement in a particular frame may be protectable just as Satava's unique rendering of "the distinctive curls of particular tendrils" or "the arrangement of certain hues" could be copyrighted. *Id.* at 812.

Finally, contrary to the Defendants' representations, the "substantial similarity" test does not require virtual identical duplication of the Stanislawskis' frames in order to establish infringement; frames, unlike jellyfish, have few inherent features which must be present to be identifiable as frames. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir.1994) ("The Act [Copyright Act]

does not require identical copying, only substantial similarity."). The Court agrees with the Stanislawskis that "their frames are neither commonplace nor expected as a matter of course" and the unique arrangement of elements in the frames are anything but "practically inevitable." (*See* Reply Br. at 8) (citing *Feist Publications, Inc.*, 499 U.S. at 363, 111 S.Ct. 1282). Certain original and individual elements of the frames are protectable as are the original arrangements of common elements within them. An assessment of substantial similarity from the perspective of an "ordinary observer" is the proper legal test for determining infringement.

The Court takes a moment now to address the sufficiency of the evidence marshaled by the Stanislawskis in support of their claim of infringement. In John Stanislawski's Second Declaration, he states that he observed knock-off frames being sold at a kiosk in Brookfield Square Mall (presumably in Wisconsin). (Second Decl. John Stanislawski.) He then provides a list of the "infringing frames" that he observed at that venue. In a Declaration, Anita Halverson, a production manager for the Stanislawskis, states that she too observed infringing frames at the same venue as Mr. Stanislawski. Her credit card receipt identified the selling company as "Studio Designs, Inc." (Decl. Anita Halverson at 3, ¶ 4.) Another individual, Cathy Young, provided a declaration saying that she too saw frames sold at a venue in Greenfield. She identifies these frames by titles used by the Stanislawskis to designate their designs. As has been previously identified, the Stanislawskis also provided pictures of what they claim were knock-offs that they found on sale at kiosks supplied by the Defendants.

The Court finds that, considering all of the evidence proffered, the Stanislawskis have shown activities that likely could be deemed infringing. The Stanislawskis have supplied photographs of some frames which they allege were knock-offs. The Court agrees with their assessment that these frames likely infringe on their copyrighted creations. The declarations supplied by the Stanislawskis suggest that they, and other people, have seen frames substantially similar to those made by the Stanislawskis, but which contain defects showing their creation by some other party. The Court could not reasonably expect the Stanislawskis to photograph all alleged infringements or purchase copies thereof. Even if they did this, the Defendants could still claim surplus inventory, third-party intervention or something similar. Nevertheless, the Court is satisfied that the Stanislawskis have borne their burden and established a strong likelihood that their protected frames have been infringed.

The Court now turns to the next prong of its injunctive relief analysis and inquires whether the Stanislawskis have an adequate remedy at law and whether they will suffer irreparable harm if the preliminary injunction is denied. *Abbott Labs.*, 971 F.2d at 11. The Court notes that even if the Stanislawskis do not have a very high probability of succeeding on the merits of their case, an injunction may still issue if they would suffer extensive irreparable harm compared to the Defendants and the public. *See Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir. 1997). Furthermore, there is a presumption of irreparable injury where a party has made a showing of copyright infringement. *Atari, Inc.*, 672 F.2d at 620.

If the Stanislawskis were to succeed on their claim of copyright infringement, monetary damages might remedy some of their lost sales resulting from the alleged infringing activities. However, the Defendants may be directly competing with the Stanislawskis by producing knock-offs of

their frames. Such direct competition may mean not only loss of profits, but also a foreclosing of certain markets and the loss of customer relations and good will. The Stanislawskis have already been blocked in at least two Wisconsin locations from selling their frames due to those stores' prior acceptance of the Defendants' allegedly infringing frames. (*See* Decl. Lynn Stanislawski at 9–10, ¶¶ 25–27.)

 On the other hand, the possible irreparable harm to the Defendants is slight, if any. First, the Defendants admit that their business enterprises include the sale of various merchandise, including candles, fragrant salts, and hair care products. (Opp'n Br. at 1.) Unlike the Stanislawskis, the Defendants' business endeavors extend beyond the sale of picture frames. Granting injunctive relief to the Stanislawskis means that only one aspect of the Defendants' business is impacted. A denial of injunctive relief, however, impacts the entirety of the Stanislawskis' business. The Court finds that the impact on the Defendants' business will be negligible at best and that they will not suffer irreparable injury.

 The Court now considers any impact on the public interest or non-parties of granting or denying the motion. In either scenario, the public has access to engraved, wooden design frames. The issue is whether the public is harmed by the potential misappropriation of protected artistic goods. Though the Defendants argue that the issuance of injunctive relief will "have the practical effect" of diminishing the business of those who sell the frames distributed by the Defendants (*see* Opp'n Br. at 19), this simply suggests that these sellers will need to purchase their frames from another party, such as the Stanislawskis. Developing a distribution network for infringing products does not create a public interest which allows infringing parties to avoid the consequences of their actions.

The Court, using the "sliding scale" approach finds that, even if the Stanislawskis have not forwarded the strongest showing of copyright infringement, the potential harm to their business enterprise strongly weighs in favor of their request for injunctive relief. Furthermore, the Defendants will only be partially burdened by the injunction—regardless of whether the ultimate action is successful. Issuing an injunction will not negatively impact the general public's interests. In fact, such relief will support the public's interests by enforcing copyright protection and preserving original works against infringing activities. For all of these reasons, the Court will issue an injunction enjoining the Defendants from creating, distributing and/or selling frames substantially similar to those created and sold by the Stanislawskis.

B. *Alleged Violations of the Lanham Act*

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, creates a civil cause of action for parties who are likely to be damaged by false representations by others in connection with goods placed in commerce. Section 43(a) provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of

his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. ·

■ In order to establish a claim under the Lanham Act, a plaintiff must prove three elements: "(1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation." *Kennedy v. Nat'l Juvenile Detention Assoc.*, 187 F.3d 690, 695–96 (7th Cir.1999).[7]

■ The Stanislawskis claim that the Defendants are using pictures of the Stanislawskis' frames in their sales brochures and advertisements even though they are only selling knock-offs of the Stanislawskis' frame designs. The Defendants deny any wrongdoing and have countered by saying that they merely continued to sell the Stanislawskis' frames from an existing inventory. The Defendants claim that they have not, and will not, use pictures of the Stanislawskis' frames to sell any new Studio Designs' designs. (Opp'n Br. at 7.)

The Stanislawskis have failed to provide any substantive evidence that might support a claim of violation of the Lanham Act. In Lynn Stanislawski's first declaration, when referring to the photographs in the Defendants' brochures, she states that "I originally did not object to the brochures because we had a deal with Karla

[Jordan] for her to sell our frames, or at least so I thought. *If* Karla is still using those brochures to sell frames, and I believe that she is, then she cannot be supplying her customers with the frames shown in the photos, which are our frames, but instead must substituting of her [sic] productions in their place." (Decl. Lynn Stanislawskis at 10, ¶ 29) (emphasis added). Conjecture of this sort, absent more, does not support a Lanham Act violation and certainly does not approach the showing required to obtain a preliminary injunction. In fact, the only substantive reference to misrepresentation is found in the Second Declaration of John Stanislawski. Mr. Stanislawski states that he visited a kiosk selling the alleged knock-offs and, when he asked for a brochure, he received one that contained pictures of the Stanislawskis' products. (Second Decl. John Stanislawski at 3, ¶ 4.)

Even if this lone piece of "evidence" were accepted by the Court, the Stanislawskis would not be granted injunctive relief based on their Lanham Act claims. First, the Stanislawskis have failed to proffer any evidence that Jordan did not have an outstanding inventory of their frames. This point was less relevant in the copyright analysis insofar as the Stanislawskis offered sufficient evidence that knock-offs were created and being sold at venues likely supplied by the Defendants. However, for purposes of the alleged Lanham Act violation, the ·Stanislawskis should show, at a minimum, that what one requests from the brochure is not, in fact, what one receives.

The Court does not even know if the items displayed in the brochure are somehow correlated to those that are displayed at the kiosk. Are all of the frames in the

---

**7.** Neither the Stanislawskis nor the Defendants identified the elements of a Section 43 violation under the Lanham act.

brochure available in the kiosk, or do some or many of them have to be ordered through the vendor? Is there a direct correlation between the frames actually being sold at the kiosk and what one would receive if they made a request pointing to a picture in the brochure?

Furthermore, the Stanislawskis have also not provided the Court with information regarding which frames depicted in the Defendants' brochure are the Stanislawskis' creations. For example, on the third photocopied page of the brochure provided by the Stanislawskis, three frames are displayed alongside the heading of "Dogs." (App.Exs.Pls.) Each frame contains an engraved semblance of the head of a dog alongside a cut-out opening in which a photograph may be placed. However, in the photographs attached to the copyright registrations, there are no such pictures. The Court does not know whether these are original designs by Jordan, frames created by the Stanislawskis but not copyrighted, or some other possibility.

The Court acknowledges some frames in the brochure appear to be frames contained in the Stanislawskis' copyright registration materials. This however is only a small part of what would need to be shown to establish a Lanham Act violation. The Stanislawskis did not say that they requested or ordered a frame from the brochure and received a knock-off instead of what they claim is represented in the photograph. All that has been offered to the Court is that brochures containing the Stanislawskis' frames were available at kiosks where knock-off frames were sold. This is not enough to satisfy the clear showing necessary to obtain injunctive relief. If Jordan is in violation of the Lanham Act, the Court has not been provided with sufficient information to reach that conclusion.

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT

The Stanislawskis' claim for infringement of their "name-frames" pursuant to the Copyright Act of 1976 is **DISMISSED** without prejudice for lack of jurisdiction.

The Stanislawskis' request for a preliminary injunction is **GRANTED** and the Defendants, Karla J. Jordan and Studio Designs of Wisconsin, Inc., as well as any of their officers, agents, servants, and/or employees, are enjoined from making, distributing, or selling decorative wood picture frames that are substantially similar to those protected by Copyright Registrations VA 1–208–242, VA 1–209–461, and VA 1–209–460, until the matters in this action are hereafter resolved or until such injunction is dissolved by this Court.

The Defendants' motion for leave to file a response to the Stanislawskis' September 1, 2004 supplemental brief in support of their motion for a preliminary injunction is **DENIED.**